COMMONWEALTH *vs.* JOSEPH BELENSKI.

SAME *vs.* SAME.

Middlesex.    April 6, 1931. — June 5, 1931.

Present: RUGG, C.J., CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Homicide. Pleading, Criminal,* Bill of particulars. *Practice, Criminal,* View, Report of department of mental diseases, Conduct of trial, Argument of counsel, New trial. *Evidence,* Admissions and confessions; Opinion: expert; Of insanity; Presumptions and burden of proof; Relevancy and materiality. *Witness,* Expert, Credibility, Cross-examination. *Unsound Mind.*

There was no error at the trial of an indictment charging murder in a refusal by the judge to permit the date of filing of a bill of particulars by the Commonwealth to be read to the jury: the date was immaterial.

The determination of the question, whether the defendant in an indictment charging murder shall be permitted to accompany the jury on a view, is within the discretion of the trial judge.

At the trial of an indictment charging murder, the Commonwealth offered an alleged confession by the defendant. The defendant objected to its admission on the ground that it was involuntary. A preliminary hearing was held in the absence of the jury. Counsel for the defendant having requested permission to read the confession before the judge read it, the judge handed the confession to him, but refused to permit his associate counsel to read it. There was evidence that the confession was obtained without threats, promises or inducements. The judge so found and admitted the confession in evidence. *Held,* that

(1) The proper procedure was followed by the judge;

(2) The refusal to permit associate counsel for the defendant to read the confession was a limitation which the judge properly could impose within his power to regulate the conduct of the trial;

(3) Certain statements in the confession which, the defendant contended, showed that it was irrational in itself, did not make it inadmissible;

(4) There was no error in the admission of the confession.

No error nor harm to the defendant at the trial of an indictment charging murder was shown in the filing, after the beginning of the trial, of the report of the department of mental diseases required by G. L. c. 123, § 100A, as amended by St. 1929, c. 105.

Noncompliance with G. L. c. 123, § 100A, as amended by St. 1929, c. 105, does not as a matter of law invalidate the trial of an indictment charging murder.

After the filing of the report of the department of mental diseases required by G. L. c. 123, § 100A, as amended by St. 1929, c. 105, which

showed that the defendant in an indictment charging murder had been examined by the competent and impartial persons appointed by the department, it was not error at the trial of the indictment to deny a motion by the defendant that he be allowed a reasonable amount to defray the expenses of an expert on mental diseases to examine him.

Upon an appeal with an assignment of errors by the defendant after a verdict of guilty at the trial of an indictment charging murder, it was *held*, that no reversible error on the part of the trial judge was shown

(1) In the exclusion of evidence which was immaterial and irrelevant;

(2) In his conduct with reference to requiring what seemed to him a proper phrasing of questions to prevent confusion in the minds of the jury;

(3) In rulings as to the form of questions put to expert witnesses;

(4) In limitations placed by him upon cross-examination upon irrelevant matters;

(5) In his exclusion of evidence, where no offer of proof was made;

(6) In his exclusion of evidence which later was admitted;

(7) In his rulings to which no exception was taken;

(8) In the exercise of his discretion as to the order of introducing evidence;

(9) In limitations placed by him upon the purposes for which evidence introduced could be considered;

(10) In the admission of evidence which, the defendant contended, was "inadmissible and highly prejudicial," the specific grounds of error not having been set forth;

(11) In the admission of evidence which was not prejudicial to the defendant;

(12) In his refusal to permit the defendant to be asked leading questions by his counsel;

(13) In his requiring witnesses to answer "Yes" or "No" or that "he doesn't remember" to certain questions which were of such a nature as to require explicit answers;

(14) In the admission of evidence bearing on the defendant's credibility.

At the trial of an indictment for the murder of a man and his wife, there was evidence that the defendant worked on a farm owned by them; that they were alive in May; that in June, upon inquiries being made of the defendant as to their whereabouts, he made various statements as to their having gone to different places and said he was going to buy the farm; that in June he attempted to collect a check payable to the man and said that he was the man's brother; that in July the defendant sold some of the cattle on the farm and collected rent; that early in August he left the town in which the farm was; that shortly thereafter the bodies of the man and woman were found, badly decomposed and bearing severe wounds and bruises, in a shallow grave on the farm; and that, after the defendant's arrest in a city, he at first denied having killed the man and woman and later stated that he had killed them and described the circumstances

thereof. In his testimony, the defendant gave a different version of the killing. An expert witness testified that the defendant was of inferior intelligence but was not insane nor definitely feeble-minded; that his mental age was between ten and twelve years; that "his criminal responsibility is not affected"; that statements made by the defendant to him suggested epilepsy; and that epilepsy is not necessarily a form of insanity but may be. *Held*, that

(1) The question of the defendant's sanity was for the jury: a motion, that a verdict of not guilty be ordered on the ground that the Commonwealth had not proved the defendant sane, was denied properly;

(2) There was no error in a refusal by the trial judge to add, to an instruction that the burden of proof was upon the Commonwealth "to satisfy the jury, beyond a reasonable doubt, that the defendant . . . was legally responsible for his acts at the time," the words, "or in other words, he was sane";

(3) The evidence warranted a verdict of guilty.

No error nor abuse of discretion appeared in the denial of a motion by the defendant for a new trial of the indictment above described on the grounds that the verdict was against the law and the evidence; especially since most of the questions raised by the motion could have been raised at the trial.

TWO INDICTMENTS, found and returned on September 4, 1930, charging the defendant with murder.

The indictments were tried together in the Superior Court before *T. J. Hammond*, J. Material evidence is stated in the opinion. The defendant was found guilty on each indictment and filed appeals with assignments of errors. The assignment of error on exception thirty-six was as follows:

"The claim of error raised by the above exception is based on the conduct of the judge who again took over the duties of the district attorney and tried to force the attorney for the defendant to adopt his phraseology, his order as to the form of the question to be put by the defendant's counsel being wrong and naturally thereby tending to interfere with the effort of counsel to keep his facts in sequence, there having been no objection made by the Commonwealth. This exception also should be read in the light of the conduct of the trial court during the entire trial."

*J. F. Daly*, for the defendant.

*F. A. Crafts*, Assistant District Attorney, for the Commonwealth.

CARROLL, J.   The defendant was convicted on November 26, 1930, of murder in the first degree on two separate indictments tried together.   One indictment charged the defendant with the murder of Wincenty Stefanowicz, otherwise called William Stefanowicz.   The other indictment charged the defendant with the murder of Stanislawa Stefanowicz, otherwise called Stacia Stefanowicz, the wife of Wincenty Stefanowicz.   The bill of particulars filed by the Commonwealth in each case specified that the crime was committed between May 20, 1930, and August 10, 1930; that the weapon or instrument used in the commission of the offence was unknown to the Commonwealth.

The evidence was as follows: Wincenty Stefanowicz was about fifty-seven years old; the wife was about seven or eight years older than her husband.   They lived on a farm in Stow owned by the husband or the husband and wife. The defendant, who was thirty-seven years of age, worked for them as a farm hand and lived with them.   Wincenty and Stanislawa Stefanowicz were alive on May 21, 1930. In June inquiries were made as to the whereabouts of the husband and wife, and when the defendant was asked about them he said the husband had gone to Chicago to see a doctor; at another time he said the husband had gone to Chicago and Mrs. Stefanowicz was in Everett; at another time he said she was in Lynn; to another witness he said they had gone to the old country; he said he was going to buy the farm in Stow and also the real estate owned by the Stefanowiczs, in Concord, with $8,000 received from his brother, who had died in New Hampshire, and $2,000 from his insurance.   In July, 1930, the defendant sold some of the cattle on the farm in Stow and collected rent for the Concord place.   In June he attempted to collect a check payable to William Stefanowicz and at that time said his name was Stefanowicz, stating: "I'm the old man's brother."   The check, payable to William and purporting to be indorsed by him, was later presented to another merchant, the defendant receiving in cash the difference between the amount of the account owed and the face value of the check.   In June the defendant said he had

received a letter from the Stefanowiczs; that they were sick and he was going to send them some money. On two occasions while Wincenty was alive he had said in the presence of the defendant that the defendant was going to buy the farm. There was also evidence that in July the defendant left the farm, and on his return said he had been to Malden to see Stacia, that she was going to return to the farm on the following Wednesday. The defendant left Stow early in August before the bodies of Mr. and Mrs. Stefanowicz were discovered.

The bodies of Wincenty and Stacia Stefanowicz were found on August 10, 1930, in a shallow grave on the farm; they were badly decomposed and the conditions indicated that several weeks had elapsed between the deaths and the discovery of the bodies. On the body of Wincenty there were several wounds on the neck and head, and the skull was fractured causing death. The body of Stacia disclosed many wounds and bruises; the nose was crushed in; there was "a furrow or gully running across the face from one cheek, — from the left cheek bone to the right"; the skull was fractured; the "right eye forced out of its socket . . . the upper jawbone was broken into pieces."

The defendant was arrested in Boston on August 12, 1930. He was taken to the district attorney's office and there questioned. Evidence was introduced of the questions put to the defendant and his answers thereto. In the course of this questioning the defendant said his name was Stefanowicz, that he never collected any money for his brother's death, that he did receive $1,000 from the insurance company in May. The defendant also said that his name was Stefanosky, that Wincenty and Stacia Stefanowicz went to Chicago in June. He denied that he knew who put the bodies in the grave. He said at this interview that the Stefanowiczs were killed by a man named John. Later, he said that on Sunday morning about eleven o'clock he killed Wincenty Stefanowicz with a stick because he refused to pay $200 that he owed the defendant; that Mrs. Stefanowicz heard the quarrel and came to the cow pasture where the defendant and husband were, and he struck the woman

with the stick; that after he killed them he dug the grave and buried them. At the trial the defendant testified that on the second Monday in June he heard Mrs. Stefanowicz "hollering 'Joe'"; that he went to the kitchen and saw her "lying down in a pool of blood"; that her husband had "the iron piece in his hand" and he said to the husband "What are you doing? What are you fighting for"; that the husband fired a shot at him and struck him with the gun; that he "pulled away that gun from him"; that Stefanowicz then attacked him with a knife and he killed Stefanowicz in self defence. On cross-examination the defendant testified he did not remember the answers made by him when questioned in the district attorney's office.

The theory of the Commonwealth was that the defendant desired to obtain the farm; that he had no money with which to buy it; that he deliberately planned to kill the Stefanowiczs, do away with the bodies, and claim to be the owner of the property. A view was taken of the farmhouse, the outlying buildings, and the grave. The assignments of error will be considered in the order in which they are argued on the defendant's brief.

1. The first assignment of error is based on the refusal of the judge to permit the date of the filing of the bill of particulars to be read to the jury on the ground that the date of the filing was immaterial. This ruling was correct. The reason for allowing a defendant to obtain a bill of particulars is to inform him fully of the nature of the offence. G. L. c. 277, § 40. *Commonwealth* v. *Snell,* 189 Mass. 12, 19. *Commonwealth* v. *Jordan,* 207 Mass. 259, 265. *Commonwealth* v. *Sacco,* 255 Mass. 369, 412. The reading to the jury of the date of the filing of the bill of particulars would not serve any purpose for which a bill of particulars is intended, nor was the date material to the defence.

2. The next assignment of error relates to the refusal of the judge to permit the defendant to accompany the jury on the view. This refusal was within the sound discretion of the trial judge. The entire subject of a defendant's right to accompany a jury on a view was fully considered

in *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 28–31. There was no error in this ruling.

3. This assignment of error is based on exceptions five, six and seven. A witness testified that Stefanowicz was indebted to him in the sum of $150. Counsel for the defendant was permitted to ask the witness on cross-examination whether prior to August 10, the date when the bodies were discovered, he caused a keeper to be placed on the premises for the purpose of collecting the debt owed him by Stefanowicz. The judge refused to allow the defendant's counsel to inquire whether after August 10 the witness caused a keeper to be placed on the premises. There was no error in this refusal, it had no relevancy to any issue in the case, and it was within the discretion of the judge to exclude it. *Commonwealth* v. *Corcoran*, 252 Mass. 465, 486. *Commonwealth* v. *Knight*, 257 Mass. 421, 425.

4. The assignment of error based on exceptions eight and nine refers to questions sought to be asked by the counsel for the defendant. The questions were allowed. The conference at the bench beyond the hearing of the jury related merely to the proper phrasing of the questions and was intended to prevent confusion in the minds of the jury.

5. During the trial the Commonwealth offered the alleged confession of the defendant. The defendant objected to its admission on the ground that it was involuntary. A preliminary hearing was held in the absence of the jury. Apparently there was only one copy in the possession of the district attorney. The trial judge proposed to read the report first, the defendant's counsel objected to this and asked for the privilege of reading it before the judge read it. The judge then handed the copy to counsel for the defendant to read but refused to permit the associate counsel to read it. The judge might have allowed the associate counsel to read it. But it is not shown that the defendant was deprived of any of his substantial rights by this ruling. It was an incident in the conduct of the trial properly subject to the judge's power of regulation. *Commonwealth* v. *Coyne*, 228 Mass. 269, 270. See *Commonwealth* v. *Dorr*, 216 Mass.

314, 319. Having fully complied with the request of counsel as to the order of procedure, the judge could in his discretion insist that counsel abide by the limitations of his own request.

6. The assignment of error raised by exceptions thirteen and fourteen, and by assignment two of additions to summary of record, relates to the confession of the defendant. At the preliminary hearing the judge found that the defendant in making the confession was not induced to do so by threats or promises or inducements. It appeared that the defendant was warned that anything he might say would be used against him in court. Subsequently the confession was submitted to the jury. The proper procedure was followed by the judge. *Commonwealth* v. *Russ*, 232 Mass. 58, 69, and cases cited. *Commonwealth* v. *Haywood*, 247 Mass. 16, 18. There was abundant evidence that the confession was free and voluntary. It was admitted in evidence properly. *Commonwealth* v. *Madeiros*, 255 Mass. 304, 314. *Commonwealth* v. *Congdon*, 265 Mass. 166, 174. It is contended that the confession in itself shows that it is irrational. In the confession the defendant said he killed Stefanowicz with a stick, that Stefanowicz called out and his wife hearing him came to the pasture and was also killed. It is argued that she was too far distant to hear the voice of her husband; that the wounds could not have been inflicted with a stick. These statements did not make the confession inadmissible. The judge was not required to find that all the statements were based on actual facts. The confession tended to show the defendant's guilt, and it was properly submitted to the jury.

7. The assignments of error based on exceptions fifteen, nineteen, twenty, twenty-one, twenty-two, twenty-four and twenty-five, relate to the report of the department of mental diseases. The trial began on November 17, 1930. On November 21, 1930, it was discovered by counsel for the defendant that the report of the department of mental diseases had not been filed with the clerk as provided in G. L. c. 123, § 100A, as amended by St. 1929, c. 105, although notice to the department had been given by the clerk. When this

was brought to the attention of the trial judge he declared a recess to await the filing of the report. The report was filed the same day. The defendant objected to the filing of the report after the trial had begun, and presented two motions (1) to strike out the testimony of one Brissett who read the stenographic report of the defendant's statements to officials on the day of his arrest, and (2) to strike out all the testimony of conversations had with the defendant. These motions were denied. Apparently, according to the defendant's brief, his objection to the filing of the report of the department of mental diseases is on the ground that "names and addresses of witnesses against him are thereby supplied to the Commonwealth and testimony provided against him." This contention has no merit. Under the statute the report is to be filed with the clerk of the court, and is made accessible "to the court, the probation officer thereof, the district attorney and to the attorney for the accused." G. L. c. 123, § 100A, as amended by St. 1929, c. 105. The defendant has not shown that he was in any way harmed by the filing of the report after the trial had begun. No objection had been made by him at the opening of the trial, although an examination of the records would have disclosed that no report had then been filed. Noncompliance with § 100A of G. L. c. 123, as amended, does not invalidate the trial as matter of law. "The terms of that section convey no such intimation. It is an important statutory provision, but its design is to forward the administration of public justice, not to put into the hands of those charged with crime a new weapon of defence." *Commonwealth* v. *Vallarelli*, 273 Mass. 249. See *Commonwealth* v. *Soaris*, 275 Mass. 291. The defendant contends that prior to the filing of the report of the department of mental diseases he filed a motion asking to be allowed a reasonable amount to defray the expenses of an expert on mental diseases to examine him. As we construe the record this motion was not denied until after the report had been filed. The denial of the motion was proper. The defendant had been examined by competent persons appointed by the department of mental diseases. There was

nothing indicating that he was not sane. The report had been filed; presumably the judge was aware of its contents. "It is a matter of general knowledge that there are in the service of the Commonwealth under this department persons eminent for special scientific knowledge as to mental diseases. The examination under the statute, therefore, may fairly be assumed to have been made by competent persons, free from any predisposition or bias and under every inducement to be impartial and to seek for and to ascertain the truth." *Commonwealth* v. *Devereaux*, 257 Mass. 391, 396. Having been examined by impartial experts the defendant was not entitled as of right to a further examination at the public expense.

8. The assignments of error raised by exceptions twenty-seven, twenty-eight and twenty-nine relate to the cross-examination of Dr. Magrath who had performed autopsies on the bodies of the victims. Counsel for the defendant asked Dr. Magrath whether a stick two inches thick caused the comminuted fracture. The trial judge informed counsel that he could ask if, in the doctor's opinion, the injuries could have been caused by a stick two inches thick. The defendant contended that he should be permitted to put the question as framed by his counsel. There was no error. It did not appear that the witness had any knowledge that a stick two inches thick had caused the fracture. At most the witness could give his opinion as to whether the injury could have been caused by such an implement. The defendant's rights were fully protected and the judge's statements were not prejudicial.

9. The next assignment of error is raised by exception thirty. In cross-examination Dr. Magrath was handed a gun. He was asked if in his opinion it would "have helped the court and jury to determine the truth here, if that gun was sent away to a proper and fit person to determine whether or not there was any blood or hair or any other injuries on it." This question was excluded. There were no facts shown upon which the witness could have based an opinion; and if the witness answered in the affirmative

the answer would have been founded on speculation. See *Commonwealth v. Henry W. Berry Co.* 256 Mass. 491, 492; *Commonwealth v. Mara*, 257 Mass. 198, 211.

10. These assignments of error are based on exceptions thirty-one and thirty-two. At the close of the Commonwealth's case the defendant filed motions for directed verdicts in both cases. One motion was based on the failure to file the report of the department of mental diseases before the trial began; the other motion was on the ground that the Commonwealth had not proved the sanity of the defendant. The contentions regarding the first motion have already been disposed of. The motion based on the alleged failure of the Commonwealth to prove the sanity of the defendant was denied rightly. *Commonwealth v. Eddy*, 7 Gray, 583. *Commonwealth v. Heath*, 11 Gray, 303. No evidence was introduced to rebut the presumption of the defendant's sanity. The burden resting on the Commonwealth was sustained. *Commonwealth v. Rogers*, 7 Met. 500, 504. *Commonwealth v. Eddy*, 7 Gray, 583. *Commonwealth v. Spencer*, 212 Mass. 438, 453.

11. Assignment of error based on exception thirty-five concerns the conduct of the judge in excluding a question asked of the witness Sherlock, a State detective who had interrogated the defendant on the day of his arrest. The witness was asked how long he questioned the defendant, and he said, about five hours. He was then asked if he had noticed "the time used by the stenographers in reading the testimony here in court." This question was excluded by the judge, no objection having been made by the district attorney. The defendant's counsel stated that the question was asked to refresh the witness's recollection. There was nothing to show that the memory of the witness was faulty, and, if it had been, the question would have served no useful purpose. The judge in his discretion and upon his own motion could restrain an examination on irrelevant matters. The judge is the directing and controlling mind at the trial; he is "not a mere functionary to preserve order and lend ceremonial dignity to the pro-

ceedings." *Whitney* v. *Wellesley & Boston Street Railway,* 197 Mass. 495, 502. *Posell* v. *Herscovitz,* 237 Mass. 513, 515. No abuse of judicial discretion is shown.

12. There is no merit in the assignment of error founded on exception thirty-six. Every suitable opportunity was given to ask of the witness any question which was proper to be asked.

13. The next assignment of error is based on exception thirty-seven. On the redirect examination by the defendant of Dr. Halloran, attached to the department of mental diseases, who had examined the defendant pursuant to G. L. c. 123, § 100A, as amended by St. 1927, c. 59, § 1, the witness, after testifying that he spent two hours or more in the examination, was asked whether it was his intention at that time to make another examination of the defendant. The question was excluded, the trial judge saying, "the question is as to what he actually did." Whatever the purpose of the defendant in asking this question, no offer of proof was made; and, if it be assumed that it was intended to show the nature of the examination, the question was properly excluded as immaterial for this purpose. At a later period of the trial, the witness was allowed to testify in detail as to the difficulties encountered by him in making the examination and in arriving at the conclusion he reached. There was no error.

14. Assignment of error based on exceptions thirty-eight to fifty relates to the exclusion of the medical history given by the defendant to a physician. At one time statements made by the defendant to the doctor attached to the department of mental diseases were excluded; later, these statements were admitted as showing the reasons for the doctor's opinion. There was no error here.

15. We have difficulty in determining to what evidence exception fifty-five is related. It would seem that the question put to the witness was allowed. If the exception referred to the question of feeble-mindedness of the defendant, this was not a real test of insanity. "Criminal responsibility does not depend upon the mental age of the defendant nor upon the question whether the mind of the

prisoner is above or below that of the ideal or of the average or of the normal man, but upon the question, whether the defendant knows the difference between right and wrong." *Commonwealth* v. *Stewart*, 255 Mass. 9, 13.

16. This assignment of error is based on exception fifty-four. It does not clearly appear that any exception was taken here. The witness who made the mental examination was asked a question by the judge as to whether the defendant's criminal responsibility was affected. The witness testified that the defendant's criminal responsibility was not affected. Counsel for the defendant asked to have the answer struck out. The judge refused to strike out the answer, and it does not appear that any exception was taken to this ruling. There was no error.

17. Before permitting counsel for the defendant to question the witness, Dr. Halloran, as to the defendant's statements of his past life, the judge required that it first be ascertained whether in the opinion of the witness the defendant was sane. There was no error in this ruling. There was no error of law as to the form of questions and the order of introductory evidence; much must be left to the discretion of the trial judge. *Commonwealth* v. *Russ*, 232 Mass. 58, 73, 74.

18. Exceptions fifty-seven and fifty-eight are the basis of the next assignment of error. Prior to admitting the history of the defendant as he related it to the witness Dr. Halloran, the judge instructed the jury that these statements were to be received not as proof of the facts asserted, but as showing the information which was before the doctor, and which served as the basis of the opinion he then formed. This instruction was proper. *Commonwealth* v. *Colangelo*, 256 Mass. 165, 166–167. We do not understand that Dr. Halloran's opinion was based on the opinion of Dr. Myerson, one of the examining experts, or that Dr. Myerson's statement was before the jury. Dr. Halloran testified that he personally examined the defendant; that his testimony was the result of his own personal examination.

19. This assignment of error is based on exception 58A. The defendant contends that the judge in suggesting to

counsel for the defendant how the defence should be conducted was in error. We find nothing in the record to support this contention.

20. As to assignment of error based on exception sixty, the witness Halloran testified that the defendant was of inferior intelligence but was not insane; that his mental age was between ten and twelve years. On cross-examination the witness testified he was familiar with statistics dealing with the mental age of prison groups. He was allowed to state that the mental age of such groups was about twelve years, "it is somewhat above the mental age that I have given as being the border line, somewhat above." The assignment of error states that this testimony was "inadmissible and highly prejudicial to the defendant." St. 1925, c. 279, § 1, adding § 33D to G. L. c. 278, provides that the specific grounds of error shall be set forth and the statement that the evidence is inadmissible or immaterial or irrelevant, without other ground, is not sufficient. Even if we assume that this exception is before us the defendant was not harmed by this testimony. The answer of the witness tended to show that the defendant's intelligence was inferior to that of prison groups as a whole.

21. The next assignment of error is raised by exception sixty-one. The defendant's counsel had been cautioned by the judge concerning leading questions put to the defendant while testifying. When counsel asked the defendant "After you hit him with this end [referring to the gun] you turned it around this way [indicating]?" the judge said: "No. Let him state what he did without you putting the words into his mouth." There was no error here. The judge in his discretion could refuse to permit such leading questions. *Commonwealth* v. *Sacco*, 255 Mass. 369, 434.

22. This assignment of error refers to exception sixty-five. There was no error in directing the witness to answer "Yes" or "No" or that "he doesn't remember" to certain questions: they were of such a nature as to require explicit answers.

23. Exception seventy, which raises this assignment of error, is not argued by the defendant; but if it is relied on no error is shown.

24. Respecting assignments of error based on exception seventy-one, seventy-two, seventy-three, seventy-four, seventy-six and seventy-seven, the defendant testified that he did not remember statements alleged to have been made by him on the day of his arrest; that he was drunk and sick on that day and on the day following. The Commonwealth was allowed to question the police officers who had the defendant in their custody with reference to his sobriety and illness. The judge admitted this testimony solely as bearing on the credibility of the defendant. This was proper. *Commonwealth* v. *Lavery*, 255 Mass. 327, 332.

25. This assignment of error is raised by exceptions eighty-two, eighty-three and eighty-six. At the close of the evidence the defendant filed motions for directed verdicts. The motions were denied properly. The mental expert testified that the defendant showed no evidence of mental disease; that he was of inferior intelligence but not definitely feeble-minded, "his criminal responsibility is not affected"; that he is sane; that feeble-mindedness differs from insanity; that statements made by the defendant to the mental expert showed that the defendant had "sudden falls and unconsciousness" suggesting epilepsy; that epilepsy is not necessarily a form of insanity but could be. On the whole evidence the question of the defendant's sanity was for the jury. There was abundant evidence upon which the jury could have found the defendant guilty of the crimes charged in the indictments. His conduct after the disappearance of the deceased persons, his contradictory statements, his flight and his confession of the crimes, all pointed to his guilt.

26. In his closing argument to the jury the defendant's counsel stated that the defendant's history showed that he had fallen and received a head laceration. The district attorney, thereupon, directed the attention of the judge to the fact that the defendant's history was not in evidence but was admitted solely as a basis of Dr. Halloran's opinion. The judge then said to the jury, in effect, that the purpose of admitting the statements in the defendant's history was to enable the jury to determine whether the doctor having

these facts before him was justified in the finding he made. There was no error.

27. Assignment of error based on exception eighty-eight relates to the refusal of the judge to add to the instruction, that the burden of proof was upon the Commonwealth "to satisfy the jury, beyond a reasonable doubt, that the defendant . . . was legally responsible for his acts at the time," the words, "or in other words, he was sane." The judge could have given the instruction with the addition requested. *Commonwealth* v. *Johnson*, 188 Mass. 382, 388. But there was no error in the instruction as given. The refusal to give an instruction in the form presented is not error. *Commonwealth* v. *Mitchell*, 248 Mass. 536, 538–539. The judge in the course of his charge read from the opinion in *Commonwealth* v. *Heath*, 11 Gray, 303, 304, and quoted from the opinion of Chief Justice Shaw in *Commonwealth* v. *Rogers*, 7 Met. 500, 501–502. In our opinion the instructions given were full and accurate.

28. The defendant also filed motions for a new trial on the ground that the verdicts were against the law and the evidence. These motions were addressed to the sound discretion of the presiding judge. *Commonwealth* v. *Bannon*, 254 Mass. 320, 325. The questions raised could have been raised at the trial. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 24, 32–33. Most of the grounds relied on to support the motions have already been considered. No abuse of discretion was shown in their denial. The motion for an allowance of funds to enable the defendant to be examined by an alienist was a repetition of a similar motion made during the trial. No error appears in its denial. Many of the assignments of error are on the ground of the improper conduct of the trial judge. An examination of the record fails to show any conduct of which the defendant can rightfully complain. The judge's attitude throughout the trial was one of judicial fairness and propriety. He protected all the rights of the defendant. We find no error in the conduct of the trial.

*Judgment on the verdicts.*