COMMONWEALTH *vs.* HERMAN SNYDER & another.

Middlesex.    December 5, 1932. — March 30, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Homicide,* Common enterprise. *Practice, Criminal,* Separate or joint trial; Questioning of veniremen; Bill of particulars; View; Exceptions: waiver. *Jury and Jurors. Evidence,* Competency; Illustration; Relevancy; Statement by coconspirator; Opinion: expert.

Three men were indicted jointly for murder. When the indictment came on for trial, the Commonwealth moved that the trial proceed against two of them and not against the third. The trial judge heard full arguments and granted the motion, subject to exceptions saved by the two defendants against whom the trial proceeded. *Held,* that

(1) The question of separate or joint trials rested in sound judicial discretion;

(2) No abuse of judicial discretion was shown by the record;

(3) The exercise of judicial discretion did not require a hearing upon facts presented to the judge in support of the motion of the Commonwealth.

In the examination by the trial judge of a venireman preliminary to his acceptance to act as a member of a jury to try an indictment for murder, the venireman stated in substance that from reading the newspapers he had formed an opinion respecting the guilt or innocence of the defendant, but he did not state what the opinion formed was. In answer to further questions by the judge, he stated in substance that he believed he could follow the evidence and render a verdict without being swayed by what he had read in the newspapers. The judge found that he stood indifferent. The defendant still had a right to peremptory challenges. The defendant's counsel asked permission to inquire of the venireman what was the opinion which he had formed, stating that such inquiry would enable him to bring to the attention of the judge grounds for challenge for cause and also would serve as a guide to the defendant as to the necessity of a peremptory challenge. The judge refused such permission, subject to an exception by the defendant. *Held*, that the ruling by the judge was free from error.

It is proper procedure for the judge at the trial of an indictment for murder to require the clerk to read to the jury, with the indictment, specifications filed by the Commonwealth in response to a motion by the defendant.

No constitutional right of a defendant indicted for murder was violated by the denial by the trial judge of a motion by the defendant "to attend view" or by an order and direction by the judge that a view be taken in the defendant's absence, where there was nothing in the record disclosing that the defendant was deprived of effective aid in the preparation and defence of his case which would have been afforded by his presence at the view.

Where, at the trial of an indictment for murder, it appeared that the homicide was by shooting, it was within the discretionary power of the judge to refuse to permit the medical examiner to illustrate before the jury "the location, direction, and course of the bullet wound" by referring "to a similar location on some other person," and, where the defendant was permitted to and did examine the medical examiner in great detail in reference to the body of the deceased, no error in such refusal was shown.

Three men were indicted jointly for the murder of the attendant at a gasoline station in Somerville. The Commonwealth was permitted to separate two of the defendants for trial before trial of the third. There was evidence that the three, all armed, in an automobile which they had taken without authority, proceeded to the station; that the two being tried got out and proceeded to the station, where one of them, upon the attendant's offering resistance, shot him; that twenty days later, at a time when one of the defendants being tried had left Boston, police raided a rooming house in Boston, found both the other defendants there and three revolvers, one of which by other evidence was shown to have been the one used to commit the homicide. The

landlady of the rooming house, subject to an exception by the defendant who had left Boston previous to the raid, was permitted to testify that the two defendants being tried were together at her rooming house some two weeks before the murder. The excepting defendant in his testimony admitted his presence in this particular house both before and after the murder. *Held*, that the evidence was admissible to show the relations between the two men, and no error was shown.

At the trial above described, there was evidence that one of the revolvers found by the police during the raid was the one used to commit the homicide, and that on the night of the murder it was in the hands of one of the defendants being tried. That defendant testified that, with his codefendant at about 12:30 in the morning following the night of the murder, he was in a room occupied by a woman on a floor above a room, hired and occupied by the codefendant, in which the police found the revolvers. The woman was permitted to testify that, a few hours preceding the entry by the police twenty days after the murder, she had seen guns in the room where the police found them. The defendant identified as the one who fired the fatal shot excepted to her testimony as binding upon him "because it was undisputed that the defendant had left Boston several days before the finding of these guns, and [he] could not be bound by what took place thereafter." *Held*, that the evidence was admissible.

At the trial of the two defendants above described, there was offered in evidence a statement by one of them made many months after the murder, which implicated the other in the murder. The judge repeatedly charged the jury that such statement was admitted only against the defendant who made it, and not against the other defendant. *Held*, that no error was committed.

At the trial of the two defendants above described, the third defendant testified for the Commonwealth, and in cross-examining him counsel for one of the two being tried, to affect his credibility by showing "that he was trying to get his counsel to get this case [the indictment against him] on for trial before" the two defendants then on trial returned to Boston, sought to ask him: "And you knew that if you ever came up before another jury, you could change your story, couldn't you"; "Your attorney . . . tried to get this case on for trial before they got" the other two; "You knew then that the government, or you realized or thought that the government had no evidence against you?" The questions were excluded. No offer of proof was made. *Held*, that the questions in themselves had no tendency to show interest, bias or prejudice, and no error was shown in their exclusion.

At the trial above described, there was no error in the exclusion of evidence tending to show that a witness had picked out a wrong man as one whom he had seen running from the gasoline station on the occasion of the murder, where the defendant excepting to the exclusion himself had testified that he was one of the men who had run from the station on the occasion described.

No error was shown by the record of the trial above described in the exclusion of a statement by the mother of one of the defendants on an

occasion which was being described as showing evidence of the defendant's insanity, where no offer of proof was made that the excluded statement related to an occurrence which preceded it nor that it would give a "complete picture" of an event otherwise incomplete: it is not the law that any and all conversation which happens to be going on at the time of an act can be proved if the act can be proved.

At the trial above described, it was proper to exclude, in the direct testimony of a witness on the issue of insanity of a defendant and relating to a visit to that defendant's father in Danvers, whom the Commonwealth admitted was insane, the reply of the witness to a direction to "Describe what you saw in Danvers."

There was no error, at the trial of the indictment above described, in permitting an expert called by the Commonwealth, in cross-examination by one of the defendants and subject to an exception by the other defendant, to be asked a question which pertained to the approximate direction of the bullet, to the position of the deceased at the time of the shooting and to a knowledge of anatomy, of the vital organs of the human body and the course of the projectile through it.

It was within the discretion of the trial judge to admit evidence by a firearms expert at the trial above described as to the effect of powder marks for the purpose of determining the distance at which the pistol was held from the body of the murdered person, although such person when murdered wore a coarse woolen sweater and the tests were made on both cotton and wool; and no abuse of discretion was shown.

On the evidence above described, the jury were warranted in finding that the defendant identified as the one who fired the fatal shot with deliberately premeditated malice aforethought shot and killed the murdered man.

There being no evidence at the trial above described that sufficient time elapsed between the struggling of the man attacked by the two defendants and the running away of one of them to show an abandonment of the enterprise by such defendant, it was proper for the judge to refuse to instruct the jury, "If the defendant . . . [who offered evidence as to running away], upon seeing the decedent . . . struggling with the [other] defendant . . . loudly cried out 'Beat it' or 'Run' or some other equivalent expression, and ran out of the filling station intending to withdraw from the common enterprise, and thereafter shot was fired, he . . . [the defendant who ran away], cannot be found guilty of first degree murder."

INDICTMENT, found and returned on April 6, 1932, and described in the opinion.

The indictment came on to be tried before *T. J. Hammond*, J.

The record disclosed that upon the motion for separation of the defendants for trial, described in the opinion, there was extended argument by both defendants. There was no offer of proof of facts.

The record disclosed the following respecting the preliminary examination of the venireman, Claude E. Furze, referred to in the opinion.

"The Judge. Have you formed or expressed any opinion relative to the case? Furze. To some extent. — The Judge. How formed? From what account? Furze. Through reading the paper. — The Judge. Is the opinion so formed such that it would preclude you from ignoring what you had read and would preclude you from following the evidence that was given here in court to the end that you should render your verdict on the testimony that was given here under oath and upon that alone? Furze. I wouldn't say so. — The Judge. You believe you could follow the evidence and render your verdict without being swayed by what you had read? Furze. Yes. — . . . The Judge. The juror stands indifferent. — . . . Counsel for Snyder. Defendant Snyder would like to interrogate through his attorney this juryman. The Judge. That is excluded. Counsel for Snyder. We would like to know what that opinion is. It may be an opinion that precludes him. The Judge. I shall not ask him that. You have the right to challenge if you desire."

The defendant Snyder saved an exception to a refusal by the judge to permit him "to put the question as to just what that opinion is." Thereafter the defendant Snyder declared himself content with Furze; but the defendant Donnellon challenged him.

The record as to the venireman Edward B. Geldert was as follows:

"The Judge. Have you formed or expressed any opinion in reference to this case? Geldert. No, only at home, I suppose, talking it over after reading the papers. — The Judge. Well, is the opinion you have expressed or formed at home an opinion that would preclude you from relying solely on the evidence presented here in court, so far as the rendering of your verdict was concerned? In other words, would you rely solely on the evidence here, and ignore anything that you have read in the papers? Geldert. Well, I think I have my mind made up after reading the

papers about the case. — THE JUDGE. Do you think your mind is made up so that it is unalterably made up? GELDERT. Well, I couldn't say just to that. THE JUDGE. That is, made up to such an extent that it would be difficult for you to follow the evidence and rely only on the evidence? GELDERT. Well, I don't know what to say about that. I don't think so. — THE JUDGE. You say you do think so, or do not think so? GELDERT. I' do not think so. — THE JUDGE. That is, you would be able to follow the evidence and disregard anything you had read in the papers? GELDERT. Yes, your Honor, — . . . THE JUDGE. The juror stands indifferent."

The defendant Snyder was refused permission to interrogate Geldert as to the nature of the opinion he had formed and saved an exception. He then challenged him.

The defendants on May 24, 1932, were found guilty of murder in the first degree and on June 7 and June 10, respectively, appealed. They received notice of completion of a summary of the record on September 19, 1932, and filed the assignments of errors described in the opinion on September 28 and October 14, 1932.

*A. C. Webber,* (*W. J. McCarty* & *L. H. Weinstein* with him,) for the defendant Snyder.

No argument nor brief for the defendant Donnellon.

*F. G. Volpe,* Assistant District Attorney, for the Commonwealth.

PIERCE, J. This case comes before this court on appeal on assignments of error. The defendants, with one James T. Garrick, were indicted for murder in the first degree of one James M. Kiley at Somerville on April 9, 1931. The defendants Herman Snyder and John A. Donnellon were put on trial and found guilty of murder in the first degree. Both defendants claimed an appeal and assigned as errors the judge's ruling to proceed with the trial without Garrick; the judge's denial to allow the defendants to interrogate certain persons called as jurymen; and numerous exceptions taken during the trial to the admission and exclusion of evidence. The defendant Snyder also excepted (1) to the judge's denial of his motion to accompany the jurymen

to a view; (2) to a denial of his motion for a directed verdict; (3) to the refusal to give the jury certain requests; and (4) to the denial of his motion that the jury be polled after the verdict.

The evidence is voluminous but the salient facts may be briefly summarized as follows: On April 9, 1931, at about 7:45 P.M., one James M. Kiley was shot and killed while employed as an attendant in the gasoline station operated by the Cities Service Refining Company on Somerville Avenue in Somerville. A government witness, William M. McNulty, testified that he was across the street from the gasoline station and heard a shot and then saw two young men rush out of the gasoline station and get into a moving automobile which disappeared in the traffic. He ran over to the gasoline station, saw the deceased on the floor, still conscious, but unable to talk, and in his right hand, between the second and third fingers, was a burning cigarette.

Kiley was removed to a hospital and was pronounced dead when he arrived. The bullet went through his heart and out through his back, striking a pane of glass located on the east side of the gasoline station. The police found the bullet back of an oil tank standing beside the rear door; the shell was found on a rack of oil containers at the right of the entrance of the station.

On April 29, 1931, the Boston police raided a second floor room in a rooming house conducted by a Mrs. MacPherson at 665 Massachusetts Avenue, Boston. In this room they found three revolvers, one of which was a thirty-two automatic, which the jury would be warranted in finding killed the deceased. Donnellon had left the room just previous to the raid. In the room were four men, one of whom was Garrick. He, Donnellon, and two other men, and a girl, Gertrude Rogers, who was a friend of Donnellon and occupied a room on the fourth floor, were arrested. Snyder had left Boston at this time. Donnellon was later released, but Garrick was held.

On April 5, 1932, Snyder was apprehended in Philadelphia where he had assumed the name of Peter Manuel. After his arrest he admitted his identity and signed a statement

that on April 9, 1931, he and Donaldson (Donnellon) went into the gasoline station in Somerville to hold up the man and rob him; that he did not fire the shot that hit the man; that he heard a shot and ran and got into the automobile which Garrick had stolen and was driving. Snyder was brought back to Somerville, and in the presence of a stenographer amplified his original statement.

On April 14, 1932, the defendant Donnellon was apprehended in California. He was brought back to Massachusetts. En route he made a statement to the chief of police of Somerville admitting his part in the affair and implicating Snyder and Garrick. Upon his return, in the presence of a stenographer, he admitted that he, together with Snyder and Garrick, on April 9, 1931, started out with the purpose of holding up some one; that they stole an automobile on St. Botolph Street, Boston; that Snyder drove it and just before they got to the gasoline station in Somerville where the deceased worked Garrick took the wheel; that one of them said, "That looks like a pretty good place," and they decided to go in; that it was understood that Donnellon and Snyder were to go in the station and Garrick was to remain at the wheel; that they all three had loaded revolvers; that on the way to Somerville the defendant Snyder changed guns with Garrick, Snyder receiving the thirty-two automatic pistol from which the bullet that killed the deceased was fired; that Donnellon went into the station first and Snyder was over to the left of him, in back; that the deceased was just hanging up the receiver of the telephone which was on the side of the wall, and Donnellon said to him, "Stay where you are"; that the deceased kept walking toward him and grabbed his necktie, and then he heard a shot and ran out of the gasoline station with Snyder; that at that time he had a thirty-two revolver and Snyder had a thirty-two automatic; that they jumped into an automobile which Garrick was driving and went to Boston, where they abandoned the automobile; that before abandoning it they rubbed from it the finger prints; that they went back to the room on Massachusetts Avenue, and the gun

that did the shooting was there cleaned by Snyder with oil and, with the other two guns, was hidden. Snyder testified that as he got in the car he said to Garrick, "Beat it"; and Garrick testified that Snyder said: "I have shot the man."

The statements of Snyder and Donnellon made before the trial do not agree on the possession of the thirty-two automatic and as to just what occurred at the gasoline station. Snyder's statement in substance was that he had a revolver, that he thought Donnellon had an automatic; that Donnellon walked into the gasoline station and he walked in after him; that when he got in there Donnellon and Kiley were not grabbing each other but something like that; that he closed the door, heard the noise of a shot, and ran out; and that Donnellon came out after him. On the witness stand Snyder testified that he was half way in the station, saw Donnellon and Kiley fighting, sparring like, and that he said, "Beat it" and ran out; that he heard a shot when he was just stepping in the automobile, and that after he got in Donnellon got in. Donnellon's testimony on the stand was in substantial agreement with his previous statement, except that on the stand he testified that he had just got outside the door when he heard the shot. On the witness stand Garrick testified in substance in accord with the testimony of Donnellon. He testified that Snyder and Donnellon told him that they were going out to hold up a store or somebody and that he decided to go with them; that he had the big automatic (which was in evidence Exhibit 26), gave Donnellon the hammerless and Snyder had the twenty-five automatic; that Snyder asked for the big automatic and he swapped with him and took the twenty-five automatic. He testified that he drove right opposite the door of the gasoline station and Snyder and Donnellon went in; that after the shot both ran out of the gasoline station; that when Snyder got in the car he said, "For Christ's sake get out of here" "I have shot the man" and that after they returned to Boston they poured oil through the one gun, wiped off the three guns, and put them away.

Evidence was given by a ballistic expert to the effect that he had made experiments with the shell and bullet found in the gasoline station with a thirty-two automatic pistol, identified as the one which Snyder had (if the testimony of Donnellon and Garrick is believed) at the time of the shooting, and expressed the opinion that the bullet that killed .Kiley was fired from that particular gun. It was admitted at the trial that James M. Kiley, the individual named in the indictment, died on the night of April 9, 1931, as a result of a gunshot or pistol wound.

Certain specifications were filed at the request of Snyder. In these specifications it is contended by the Commonwealth that Snyder did the actual shooting. The request of Snyder and the answer of the Commonwealth were read to the jury against the objection of the defendant Snyder.

We now consider the assignments of the defendant Snyder.

1. The first assignment of error is based on exceptions 1 and 2 and relates to the allowance of the motion by the Commonwealth that the trial proceed against Snyder and Donnellon and not against Garrick. The question of separate or joint trials rests in sound judicial discretion, *Commonwealth* v. *Gallo*, 275 Mass. 320, 326, *Commonwealth* v. *Borasky*, 214 Mass. 313, *Commonwealth* v. *Sacco*, 255 Mass. 369, 413, which was not abused on the reported evidence in this case. The contention that the exercise of judicial discretion required a hearing upon facts presented to the judge in support of the request of the district attorney is not supported by the decisions. The judge appears to have acted in the exercise of his discretion and the question is not presented whether (as has been said) it is optional with the prosecuting attorney to try the defendants jointly or separately unless the judge grants a severance on the motion of one or more of the defendants. *United States* v. *Wilson*, 28 Fed. Cas. 699. *People* v. *Clark*, 102 N. Y. 735. *Regina* v. *Richards*, 1 Cox C. C. 62. See *State* v. *Francis*, 152 S. C. 17, and, on the issue raised by the defendant, note to that case and collection of cases in 70 Am. L. R. 1171, 1178, 1179.

2. The second and third assignments of error consist of exceptions 3, 4, 5, 6 and 7. They may be considered together, and are so considered in the brief of the defendant and of the Commonwealth. They relate to the refusal of the judge to permit examination of the veniremen Claude E. Furze and Edward B. Geldert concerning opinions formed by each of them, through reading the papers, to enable the defendant to bring to the attention of the judge grounds for challenge for cause and also to guide the defendant as to the necessity of a peremptory challenge. In each instance the veniremen Furze or Geldert stated that the opinion formed by him from reading the papers would not preclude him from following the evidence and rendering a verdict on the testimony given under oath. The judge ruled that each of them stood indifferent. Thereupon the venireman Furze was challenged by Donnellon and the venireman Geldert was challenged by Snyder. The defendant concedes that G. L. (Ter. Ed.) c. 234, § 28, was not intended to give a party defendant the right to submit a venireman to cross-examination in order to elicit facts tending to show bias or prejudice on the part of a juror, but contends that, within the rule stated in *Commonwealth* v. *Cero*, 264 Mass. 264, at page 271, something appeared which made it proper to go beyond the usual course of procedure, in that the veniremen openly indicated the forming of opinions. There is nothing in this contention. Furze responded in the affirmative to the question put by the judge: "You believe you could follow the evidence and render your verdict without being swayed by what you had read?" Geldert likewise responded in the affirmative to the question put by the judge: "That is, you would be able to follow the evidence and disregard anything you had read in the papers?" In these circumstances there was no occasion for the judge to go further than to follow the established rule. *Commonwealth* v. *Webster*, 5 Cush. 295. *Holt* v. *United States*, 218 U. S. 245, 248. The ruling was free from legal error.

3. The fourth assignment of error is based on exception 8, and assigns as error the ruling and direction requiring the clerk to read the Commonwealth's specifi-

cations to the jury after objection made to this procedure by this defendant (Snyder) because the office of said specifications was merely to inform the defendant of certain facts to enable him to present his defence, and the reading of the specifications tended to prejudice this defendant before the jury. It is obvious this procedure was warranted, as the Commonwealth contends it was, by the language used in *Commonwealth* v. *Howard*, 205 Mass. 128, 145, *Commonwealth* v. *Peakes*, 231 Mass. 449, 456, and in *Commonwealth* v. *Gedzium*, 259 Mass. 453, 457. The governing statute, G. L. (Ter. Ed.) c. 277, § 40, authorizes the judge to have the specifications read to the jury. The reason for allowing a defendant to obtain a bill of particulars is to inform him fully of the nature of the offence "where the indictment alone does not sufficiently inform the defendants, and this as matter of right." *Commonwealth* v. *Farmer*, 218 Mass. 507, 509. *Commonwealth* v. *Belenski*, 276 Mass. 35, 40. The specifications affect the proof, mode of trial and the indictment, and are a part of the record. *Commonwealth* v. *Gedzium*, 259 Mass. 453, 457, 458, and cases cited. Indeed the defendant was not prejudiced by the procedure followed, for the district attorney rightfully could and did present the same facts to the jury in his opening.

4. The fifth assignment of error rests on exception 9 and relates to all proceedings that occurred in relation to the view taken by the jury, the refusal to permit Snyder to be present, the denial of his written motion "to attend View" and the order and direction to take a view in this defendant's absence, and alleges that this refusal was in violation of the constitutional rights of the defendant under the Constitution of the United States and the Constitution of Massachusetts which guarantee the right of a defendant in capital cases to be present at all stages of the trial and face his accusers and to be present when testimony is offered against him. The decisions on the question relating to view in criminal cases are in conflict in other States. The cases recognizing the right of the accused to be present when such view is had do so chiefly on the

ground that either it is a part of the trial, or, since the jury
have the right to treat the information received during the
view as evidence, the accused, under the Constitution,
has a right to be confronted by the witnesses and therefore
must be present. See note to *Noell* v. *Commonwealth* (135
Va. 600), 30 Am. L. R. 1345, 1357, where the cases are re-
viewed; see also note to *People* v. *Thorn* (156 N. Y. 286),
42 L. R. A. 368. At common law, except upon an indict-
ment for criminal nuisances, a view was not allowed in
criminal cases "without mutual consent." *Commonwealth*
v. *Handren*, 261 Mass. 294, 297. In this Commonwealth
the judge by Rev. Sts. c. 137, § 10, now G. L. (Ter. Ed.)
c. 234, § 35, was given authority to "order a view by any
jury empanelled to try a criminal case." It is now settled
that a view is not such a taking of evidence as violates the
constitutional right of the defendant "to meet the witnesses
against him face to face." *Commonwealth* v. *Dascalakis*,
246 Mass. 12, 31. 3 Wigmore on Ev. (2d ed.) § 1803.
It is expressly decided in *Commonwealth* v. *Dascalakis*,
246 Mass. 12, 31, that the defendant in a capital or
other criminal case could waive whatever rights he had
to accompany a jury on the view, and it was said that
"There are obvious practical objections to the contention
that as matter of right a defendant in a criminal case may
accompany the jury on a view. The whole subject rests
in the sound discretion of the court." It was decided in
*Commonwealth* v. *Belenski*, 276 Mass. 35, that the refusal
in that case to permit the defendant to accompany the
jury on a view was within the sound discretion of the
trial judge, citing *Commonwealth* v. *Dascalakis*, 246 Mass.
12, 28–31. The defendant Snyder in support of his motion
to be present at the view argued the broad ground of legal
right to be present at all times during the course of the
trial and thereby to acquaint his counsel with the facts
thus secured which might be necessary to aid in his defence.
The attorney for the defendant Donnellon in support of
the motion said: "In order for my client to understand
and to see the things so that he can either disclaim or rebut
the evidence presented against him, I want him in my

presence to point out the things." The judge said: "I am not sure but that can be arranged." Counsel for Donnellon then said: "I do not care whether it is done in the presence of the jury." The judge then decided it would not be for the best interest of any one to have the prisoners go with the jury but stated: "On the other hand, I will consider the question as to whether or not an opportunity will be given you, if after going there you cannot understand the situation, to go there with your client alone, under proper supervision, provided, of course, that no comment is made by yourself in advance that any such thing would happen or any intimation [be] given to the press. I will consider that and see what you decide after you go to the scene this morning." After the view the request was not renewed. There is nothing in the record which discloses that the defendants were deprived of effective aid in the preparation and defence of their case that would have been afforded by their presence at the view. We see no error in the trial judge's refusal to grant the motion. The defendant's contention that the refusal to grant the motion is a violation of art. 14 of the Amendments to the Constitution of the United States in that it is a denial of "effective aid in the preparation and trial of the case," and therefore is a denial of due process of law, citing *Powell* v. *Alabama,* 287 U. S. 45, 52, 57, 58, 71, is unsound, in that the chief purpose of a view is to enable the jury to understand better the testimony which has been or may be introduced, and because the view is not a part of the trial, it being suspended while the view is taken. *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 29–30. See *Commonwealth* v. *Slavski,* 245 Mass. 405, 413.

5. The sixth assignment of error rests on exceptions 12 and 13 and relates to the refusal of the judge to permit the medical examiner to illustrate before the jury "the location, direction, and course of the bullet wound" by referring "to a similar location on some other person." In his discretion the judge could have granted this request. *State* v. *Hoagland,* 39 Idaho, 405, 422. The defendant was permitted to and did examine the medical examiner in

great detail in reference to the body of the deceased. There is no error shown by the refusal.

6. The eighth assignment of error is based on exception 25, and relates to the admission of testimony of the landlady of the rooming house in which the "fatal" gun was found by the Boston police, to the effect that she saw Snyder and Donnellon together at her rooming house some two weeks before the murder. The defendant Snyder rests his objection on the contention that the evidence was not indicative of any act on his part tending to prove the guilt of the charge in the indictment. The evidence was clearly admissible to show the relations existing between the two men, and Snyder in his testimony admitted his presence in this particular house both before and after the murder.

7. The tenth assignment of error rests on exceptions 40, 41, 42 and 43. It relates to the testimony of one Gertrude Rogers that she saw guns in the room at 665 Massachusetts Avenue in the early part of the evening of April 29, 1931. The defendant Snyder objects to this evidence as binding upon him "because it was undisputed that the defendant had left Boston several days before the finding of these guns, and [he] could not be bound by what took place thereafter." The finding of objects in the house of another without a showing that the defendant was connected in any way either with the house or with such other person is inadmissible; *McBride* v. *Commonwealth*, 95 Va. 818; but the connection was here shown. The Commonwealth introduced evidence to show that one of the guns found in this room, when the police raided it a few hours after Gertrude Rogers had seen the guns there, was the "fatal" gun, and this gun was traced into the hands of Snyder on the night of the murder. Snyder testified that he was with Donnellon in Gertrude Rogers's room on a floor above at about 12:30 in the morning following the night of the murder. The evidence tended to prove that Donnellon hired and occupied the room where Gertrude Rogers saw the guns and that he had stepped out of the room just before the raid by the police. There was no error in the admission of

this testimony. Moreover, the judge speaking of exception 43 said to counsel for the defendant: "I don't understand that anything is in up to this point, but if there is anything that counsel desire now to offer, it may go in." This was not followed by any offer of proof. These exceptions could therefore properly be treated as waived.

8. Assignments of error 11 to 14 are considered together in the defendant's brief and we so treat them. The eleventh assignment relates to the ruling of the judge admitting statements of Donnellon made a year after the shooting to the chief of police of Somerville, not in the presence of Snyder, which tended to implicate Snyder in the murder; the twelfth, thirteenth and fourteenth assignments of error rest on exceptions 46, 47, 55, 56, 57 and 58, and relate to the ruling of the judge admitting part of the statements made by Donnellon to the assistant district attorney in the presence of a stenographer, in which there were statements implicating Snyder in the murder. It is settled that declarations, admissions, or confessions made after the conspiracy has ended bind only the maker, and cannot be used in evidence against other members of the conspiracy not present when they are made. *Commonwealth* v. *McDermott*, 255 Mass. 575, 581. This evidence never was admitted against Snyder. The jury were instructed in every proper way not to consider this evidence against Snyder. They were told: "This [evidence] is admitted only as against Donnellon. Keep that in mind even though there be references to any acts of either of the others who it is alleged were there"; and again, at the conclusion of the reading of the statement of Donnellon, the judge said: "It is not admitted as against Snyder. It is only admitted as against Donnellon, and I again repeat that to the jury." This was all that was required of the judge. *Commonwealth* v. *Rogers*, 181 Mass. 184, 193.

9. The sixteenth and seventeenth assignments of error, based on exceptions 61, 62 and 63, are considered together. They relate to the cross-examination of Garrick, who was called by the Commonwealth, the object being to affect the credibility of Garrick by showing "that he was trying

to get his counsel to get this case on for trial before Snyder and Donnellon returned." The questions for this purpose excluded were (1) "And you knew that if you ever came up before another jury, you could change your story, couldn't you?" (2) "Your attorney, Mr. Daly, tried to get this case on for trial before they got Snyder and Donnellon?" (3) "You knew then that the government, or you realized or thought that the government had no evidence against you?" The defendant contends that these questions were well within the limits of reasonable cross-examination "to prove interest or bias or prejudice" and he, Snyder, had the right to have them answered as an absolute right and not within the discretion of the judge, citing *Commonwealth* v. *Russ*, 232 Mass. 58, 79, *Commonwealth* v. *Sansone*, 252 Mass. 71, 74. See *Commonwealth* v. *Marcellino*, 271 Mass. 325. There was no offer of proof and in the absence thereof it is plain the questions in themselves had no tendency to show interest, bias or prejudice. *Commonwealth* v. *Sansone*, 252 Mass. 71. The questions were rightly excluded.

10. The eighteenth assignment of error rests on exceptions 64 and 65, and relates to the rulings of the judge wherein he refused to admit evidence of a witness, Downes, that McNulty had picked him out as one of the two men he saw running from the gasoline station. If it be assumed that the evidence would have a tendency to contradict McNulty and was therefore admissible, Snyder suffered no material harm by its exclusion for the reason that he testified himself to running out of the gasoline station and getting into the car.

11. Assignments of error 20 to 22 inclusive, based on exceptions 69 to 71A, are considered together. They relate to the issue of insanity. One Danzinger, testifying as to the conduct of Snyder upon an occasion when the witness was visiting the Snyder family, was asked by counsel for Snyder: "what did the mother say to him on this occasion?" referring to an incident which arose during the service of a dinner to the children, and which followed the action of the mother when she went over to Snyder and

"says, 'Hermie, this is your plate,' and he sat down and —"
Exception 69 relates to what, if anything, the mother said.
The defendant made no offer of proof, but contends that
the statement of the mother, whatever it was, was a part
of the *res gestae* and that it would tend to illustrate and
explain the conduct of Snyder which followed. It does not
appear that the excluded utterance related to the circum-
stance of the occurrence which preceded it or that it would
give a "complete picture" of an event otherwise incomplete.
3 Wigmore on Ev. (2d ed.) § 1750. "It is not the law that
any and all conversation which happens to be going on at
the time of an act can be proved if the act can be proved."
*Commonwealth* v. *Chance*, 174 Mass. 245, 251. The same
witness testifying as to a visit made on Snyder's father in
Danvers was asked to "Describe what you saw in Danvers."
The evidence was excluded rightly; it was too broad, and
if it were applicable to the condition of the father, it would
be no better. The Commonwealth had admitted the in-
sanity of the father and the particular form or manifesta-
tion of it was not material to any issue in the case. The
defendant assigns as error the exclusion of testimony of one
Dr. Fairbanks "in describing what opportunity he had to
make a study of the defendant, as a basis of giving an
opinion on the ground that such testimony is material to
explain the doctor's final opinion as given to the jury."
This assignment was based on exception 71A. This excep-
tion was disallowed. However, the defendant was not
harmed for the witness subsequently testified as to just
what opportunity he had to make a study of the defendant.

12. The next assignment of error, 23, rests on exceptions
72 to 85 inclusive and relates to the admission of the testi-
mony of the witness Van Amburgh, an expert in firearms
evidence in the department of public safety, given under
cross-examination by counsel for the defendant Donnellon
as to the approximate direction of the bullet and the posi-
tion of the deceased at the time of the shooting. The con-
tention of the defendant Snyder is "that such testimony
was within the knowledge of the ordinary person who was
as qualified as the witness to give his opinion on the sub-

ject." The questions were in part based on the hypothesis of the bullet entering the body from left to right, leaving the body an inch or two below the right shoulder. The testimony pertained to a knowledge of anatomy, of the vital organs of the human body and the course of the projectile through it. It cannot be presumed the jury would not be aided by the technical knowledge of the witness. *Commonwealth* v. *Dorr*, 216 Mass. 314, 317. *Commonwealth* v. *Festo*, 251 Mass. 275, 280. The testimony of the witness did not involve any expression of opinion on disputed questions of fact. *Stoddard* v. *Winchester*, 157 Mass. 567, 575. The procedure followed was in conformity with the rule laid down in *Commonwealth* v. *Russ*, 232 Mass. 58, 73–74. *Whalen* v. *Rosnosky*, 195 Mass. 545, cited by the defendant, is plainly distinguishable. There was no error in the admission of this testimony.

13. The next assignment of error, 23A, rests on exception 86 and relates to the testimony of the same witness, Van Amburgh, as to the effect of powder marks for the purpose of determining the distance at which the pistol was held from the body of Kiley. The defendant contends that the evidence was improperly admitted "since the witness did not use the same material in his experiments as that worn by Kiley at the time of the shooting." The experiments were not made under identical conditions but were made under such similar conditions as naturally would tend to throw light on the point in controversy and to assist the jury to arrive at the truth. When Kiley was shot he wore a coarse woolen sweater; the tests were made on both cotton and wool. It is plain the admission of the evidence was a matter of discretion which was not abused.

14. Assignments of error 25, 25A, 25B and 26 relate to requests for rulings and to the charge. The eleventh and seventeenth requests were as follows: "Upon all the evidence, the defendant Snyder is not guilty of the crime of murder in the first degree." "The jury is not warranted in concluding upon the evidence that the shooting of the decedent was done with deliberately premeditated malice aforethought." Counsel for the defendant Snyder states

that these requests "sought to have withdrawn from the jury the submission of the issue of murder in the first degree so far as the deliberation and premeditation element was concerned." The point was also raised by motion. Assignment 24 based on exception 89 relates to the denial of this motion. On the motion and on the requests it is sufficient to say without a review of the evidence that it is clear the jury were fully warranted in finding that the defendant Snyder with deliberately premeditated malice aforethought shot and killed James M. Kiley. *Commonwealth* v. *Tucker*, 189 Mass. 457, 486–496. Requests 34, 35 and 37, which were refused, relate to the use of intoxicating liquor and the mental condition of Snyder. There was evidence that Snyder had been drinking before the killing of Kiley. Snyder testified that he was drunk at the time the car was stolen, and that he was unable to drive. There is no evidence as to his condition due to intoxicating liquor at the time of the commission of the crime; full and accurate instructions were given the jury by the trial judge on this branch of the case, *Commonwealth* v. *Gleason*, 262 Mass. 185, 191, *Commonwealth* v. *Taylor*, 263 Mass. 356, 362–363, as well as on the mental condition of the defendant. *Commonwealth* v. *Rogers*, 7 Met. 500. *Commonwealth* v. *Stewart*, 255 Mass. 9, 13–14. Request 40 is as follows: "If the defendant Snyder, upon seeing the decedent Kiley struggling with the defendant Donnellon loudly cried out 'Beat it' or 'Run' or some other equivalent expression, and ran out of the filling station intending to withdraw from the common enterprise and thereafter shot was fired, he, Snyder, cannot be found guilty of first degree murder." The refusal of this request was proper. There "was no basis upon which could have rested a verdict that the defendant made timely abandonment of the criminal enterprise in which he had been a conceded participant . . . . Whatever may be the other requirements of an effective abandonment of a criminal enterprise it is certain both as a matter of law and of common sense that there must be some appreciable interval between the alleged abandonment and the act from responsibility for which escape is sought." *People* v. *Nichols,*

230 N. Y. 221, 228–229.    Here, the struggle, the alleged call to Donnellon to come out, and the fatal shot, were all parts of a single and brief transaction.

15. The seventh assignment of error resting on exceptions 14 and 15, the ninth assignment resting on exceptions 29, 30, 31, 32, 33, 34A, 35 and 35A, the fifteenth assignment resting on exception 59, the nineteenth assignment resting on exceptions 66 and 67, part of the twenty-fifth A assignment resting on exception 88, refusals to rule, the twenty-sixth assignment resting on exceptions 91 and 92 and the twenty-seventh assignment of error resting on exceptions 93 and 94, have not been argued and ordinarily would be deemed to be waived.    We have, however, examined each and all of the exceptions and find no reversible error.    No assignments of error were made by the defendant Snyder as to exceptions 15B, 19, 20, 28, 87 and 90.    These are not open to the defendant under G. L. (Ter. Ed.) c. 278, § 33D.    *Commonwealth* v. *Cero,* 264 Mass. 264, 271.

The defendant Donnellon filed ten assignments of error. He filed no brief.    We have considered all the exceptions on which they are based and find no reversible error.

*Judgment on the verdict.*