COMMONWEALTH *vs.* HARRY CONGDON & others.

SAME *vs.* HARRY CONGDON & others.

Essex.    October 18, 1928. — November 27, 1928.

Present: CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Practice, Criminal,* Confession, Exceptions, Judge's charge. *Evidence,* Presumptions and burden of proof, Competency, Confession, Privileged communication. *Waiver. Constitutional Law,* Due process of law. *Confession.*

Exceptions, saved by the defendant at the trial of an indictment, which were not briefed, but merely were "submitted for the consideration of the court," were *held* to have been waived.

Discussion by PIERCE, J., of the rule of law relating to the privilege of nondisclosure applicable to the communication to governmental agencies of information useful for the detection of and correction for crime.

At the trial of an indictment charging the defendants with conspiracy illegally to expose and keep for sale intoxicating liquor, the Commonwealth offered in evidence a statement in the nature of a confession made by one of the defendants to a special agent of the department of justice of the United States. In an examination of the special agent preliminary to the admission of such statement, the witness testified that he went to the defendant's house, and told him he was a Federal officer; that his recollection was that he advised the defendant that anything he say would be voluntary and might be used against him; and that it was an occasion upon which the defendant and other persons, although possibly involved in the situation, should "come forward and truthfully tell all that they knew about it"; that he encouraged the defendant in every legal way to tell his story; that, in response to an inquiry as to the use of such a statement against the defendant in the State courts, he impressed upon the defendant that it was entirely a Federal matter with which the State courts had nothing to do, although he did not say to the defendant that he would "see to it that it [the statement] wasn't used against him [the defendant] in the State court"; that he did not have to threaten the defendant; that his "best recollection" was "that it was an occasion upon which he [the defendant] should speak even though he had been involved in it in the past"; and that the defendant thereupon made the statement which the witness took down stenographically. The trial judge excluded a question asked the witness in cross-examination, "Doesn't make any difference to you that you got the statement . . . after you had told . . . [the defendant] you wanted . . . . [it] to use in an investigation for the Federal

courts and that the district attorney of the State courts had nothing to do with it?" The judge admitted the statement in evidence and refused to permit the defendants' counsel to argue to the jury that it was not voluntarily made. *Held,* that

(1) The statement was *prima facie* voluntary; and the burden was on the defendants to show the contrary;

(2) The testimony above described did not warrant a finding by the judge that the defendant was induced to make the statement because of any promise or threat made to him by the witness;

(3) The finding by the judge, that the statement was voluntary, was proper;

(4) There was no error in the refusal by the judge to permit the defendants' counsel to argue to the jury that the statement was not voluntary;

(5) There was no error in the exclusion of the question asked the witness in cross-examination;

(6) The statement was not a privileged one which could not be admitted without a previous waiver of the privilege by the United States;

(7) The admission of the statement in evidence was not a violation of the defendants' rights under the Fifth and the Fourteenth amendments to the Constitution of the United States.

No exception lies to the whole charge of the judge at the trial of an indictment.

Exceptions to specific portions of the judge's charge at the trial of an indictment, on the ground that they were unfair, argumentative and dealt with matters of fact, were overruled where it appeared that such portions of the charge, read with their context and with the entire charge, were not open to such criticism.

Two INDICTMENTS, found and returned on November 8, 1927, the first charging the defendants with conspiring illegally to expose and keep for sale intoxicating liquor, and the second charging the defendants with conspiracy to bribe two of the selectmen of the town of Salisbury.

Material evidence, the judge's charge, and exceptions saved by the defendants at the trial of the indictments together before *Quinn,* J., are described in the opinion. Certain of the defendants were found guilty and alleged exceptions.

*W. H. Lewis,* (*W. H. Fay* with him,) for the defendants.

*F. E. Raymond,* Assistant District Attorney, for the Commonwealth.

PIERCE, J. The questions raised by the defendants' bill of exceptions arose in the trial of two indictments together, at a sitting of the Superior Court for the county of Essex.

The first indictment (No. 13022) charged the defendant Harold Congdon and fourteen others with conspiracy "to illegally expose and keep for sale certain intoxicating liquor" in the town of Salisbury. The record shows that all the defendants were acquitted except Harold Congdon, Everett R. George, Ruel S. Getchell, Warren S. Frothingham, and Howard F. George, and that each one of the convicted defendants was sentenced to imprisonment and to pay a fine. The second indictment (No. 13023) charged Harold Congdon and eleven others with conspiring to bribe Ruel S. Getchell and Everett R. George, selectmen of the town of Salisbury. The record shows that of the persons tried in this indictment, Anthony Caramagno and Albert H. Reynolds pleaded guilty, Harold Congdon was found guilty, the other defendants were found not guilty; and that Harold Congdon was sentenced to pay a fine, and to serve a term of imprisonment in the House of Correction to run concurrently with the sentence in indictment No. 13022.

At the trial the defendants took numerous exceptions, some of which were briefed and argued before this court; others are not briefed and are "submitted for the consideration of the court." An excepting party cannot impose on the court an obligation to consider exceptions which he does not consider of sufficient importance to be briefed; and a failure to brief an exception is in law a waiver of that exception. *Fay* v. *Hunt*, 190 Mass. 378. *Eastern Advertising Co.* v. *Shapiro*, 263 Mass. 228, 234. We shall consider the exceptions of the defendants in the order of their presentment in their brief.

Exceptions 1 and 16 relate to a plea in bar. In open court they were orally waived at the argument of the bill of exceptions.

Exception 8 is to the admission in evidence of a statement, in the nature of a confession, by the defendant Ruel S. Getchell to one William J. West, a special agent of the department of justice of the United States. When called as a witness West, in substance, testified that on August 18, 1924, he had a talk with Ruel S. Getchell in the nature of a confession, as a result of which he testified for the United States

in two trials in the Federal Court, in October, 1924, and in June, 1925, and he also testified before the grand jury. The statement or talk was offered in evidence by the Commonwealth and objected to by the defendant "as not voluntary" and as privileged under the laws of the United States. In the absence of the jury, counsel for the defendants was permitted to make a preliminary examination of the witness as to the admissibility of the proffered statement. In cross-examination by the attorney for the defendants, West testified, in substance, that at the time he obtained this statement from Ruel S. Getchell he was an agent of the department of justice, called bureau of investigation; that he was detailed to make this investigation by the chief upon instructions from Washington; that he went to Getchell's house, told him he was a Federal officer and that he and one Shine who accompanied him "were there upon investigation into conditions down there at Salisbury Beach"; that Getchell said that he had heard that they "had been down in that vicinity, and that two then or former police officers had been to see him the day before . . . [the Federal officers] called, or a few days before . . . [they] called." Upon the statement of the witness that he had testified to all that took place "Preliminary to the statement" the attorney for the defendants, with the permission of the district attorney, looked at the statement of Getchell, which West had taken stenographically and transcribed, learned from West that he had transcribed the shorthand notes and that he did not have the shorthand notes with him. In response to the questions put by the attorney for the defendant, "Did you warn Mr. Getchell? What did you say to Mr. Getchell before you took the statement, if you said anything?" the witness answered: "That was three years ago. Of course, it is rather difficult at this time to remember every detail, but my recollection is that Mr. Getchell was advised that he would not be compelled to make any statement, that anything he said might be used against him as the district attorney saw fit, and that anything he said should be voluntary on his part. I believe that in the preliminary conversation with him that we told him that conditions down there

were such that it had apparently reached Washington and an investigation had been directed. The government was intent upon clearing up the situation and that it was an occasion upon which he and other citizens down there, although involved in it possibly, should come forward and truthfully tell all that they knew about it." The witness testified that he did not tell Getchell "that if he made a statement . . . it would not be used against him"; that the reason why it in fact was not used against Getchell was "because it was entirely unnecessary to use the statement in view of the plea of guilty on the part of Mr. Getchell, and his testimony on behalf of the government in the two prior cases."

The following cross-examination of the witness by the defendants' counsel then took place: "Q. Now, did you say — you talked with Getchell for some time, didn't you? Didn't you say to him 'it would be best for you to tell the truth?' Didn't you say that in substance, Mr. West? A. I, in substance, told him that he had — the only thing for him to do was to tell the truth . . . about the entire situation. Q. And you told him it would be better for him and all concerned if he told the truth, didn't you, in substance? A. Well, I don't remember . . . as to whether or not I said it would be better for him and all concerned to tell the truth. Q. You told him it would be better for him to tell the truth, didn't you, Mr. West? A. I don't think, Mr. Lewis — Q. You wouldn't say you didn't say that? A. No, I wouldn't want to say I didn't say 'It would be better for you to tell the truth,' but my best recollection, sir, is that I told him this was a time for a man to come forward and tell the truth and tell all that he knew about the situation. Q. And you told him it would be better for him to tell the truth, didn't you? A. No, sir, I don't remember that. Q. You wouldn't say you didn't, Mr. West? You are an experienced officer, Mr. West? You have been in the service ever since I was in the district attorney's office, haven't you? A. Yes, around that. Q. Some 25 years? A. Yes. Q. Twenty years? A number of years. A. I have no hesitancy in telling you the entire situation. Q. So

far as you can remember?  A. So far as I can remember.
Q. Yes.  Now, you were talking with Mr. Getchell for some
time, weren't you?  A. Yes, sir, for from 8:30 in the evening,
I believe, until close onto midnight.  Q. And it was some
little time before he made the statement to you, wasn't it?
You had some little preliminary talk?  A. No, sir, not so
much that as his hesitancy in answering questions.  Q.
Well —  A. This —  Q. That is to say, you proceeded to
ask him questions.  A. Yes.  Q. And you weren't getting
satisfactory answers?  A. No, I — in some instances the
answers were not satisfactory, but we would ask a question
and then it might be some minutes before he would answer
it.  Q. And this statement you have got here doesn't repre-
sent all that he said?  A. It doesn't represent the prelimi-
nary conversation, sir.  Q. No, of course not.  And you
didn't begin to take down what he said until he had agreed
to do what you wanted him to do, to tell the story.  That
is right, isn't it?  A. No, sir, that is not just the situation.
Q. Well, at all events, how long were you talking with him
before you began to take down the story?  ·A. I should say,
my best recollection of that is it was a very short while.  It
might have been five or ten minutes.  Q. Might have been
an hour?  A. Oh, no, not that.  Q. You encouraged him
to tell his story, didn't you, Mr. West?  A. Yes, sir.  Q.
Gave him every encouragement to tell his story?  A. Not
every encouragement.  Every legal encouragement and
proper.  Q. That is to say, protecting yourself?  A. It
didn't make any difference to me, Mr. Lewis.  Q. No, it
didn't?  You aren't quite frank there, are you, Mr. West?
You wanted to get a statement, didn't you?  A. I wanted
to get the entire truth of the situation.  Q. You wanted to
get what you were sent to get?  A. Yes, sir, in a proper
manner.  Q. After he gave you the statement did Mr.
Getchell go before the grand jury?  A. Yes, sir, he did.
Q. And testified before the Federal grand jury?  A. Yes,
sir.  Q. Did he testify at the first Federal trial of this case?
A. Yes, sir, I believe he did.  Q. And did he testify at the
second Federal trial of this case?  A. Yes, sir, he did.
Q. Now, didn't you say to him, Mr. West, 'If you testify for

the Government we will see to it that no punishment comes to you?' A. No, sir. Q. Didn't you say it? A. I didn't say to Mr. Getchell that no punishment would come to him. Q. What did you say to him? A. Do you mean at the time this statement was taken, or at any time? Q. Afterwards. . . . Didn't you also tell Mr. Getchell that if he so testified what he said would not be used against him in the Federal court and as far as you were concerned you would see to it that it wasn't used against him in the State court? A. No, sir, I haven't any such recollection of any statement. Q. You won't say it didn't happen? A. I will say it did not happen, sir. Q. Do you remember talking with Frothingham here, this young fellow, and he said to you, 'Suppose the district attorney in Essex County takes a notion to indict us what will you do then'? Do you remember saying, 'I will see to it that the district attorney in Essex doesn't do anything to you'? Do you remember saying that? A. Now that you call my attention to it I think that Mr. Frothingham at one time, sir, did make a reference to the use of any testimony that he might give. That is, he said something to the effect that somebody down there, some officer or some one might arrange to have that testimony used against him in the State courts. Q. Yes. A. I believe, sir, I said at that time that it was a matter in which the Federal courts had jurisdiction and the State courts had nothing to do with it. Q. And that is what you thought at the time, Mr. West? A. Oh, yes. Q. And if you thought so at that time you said to him, 'Why, you needn't bother about what the State court does,' or you gave him that assurance? A. Why, I impressed it upon him at that time that it was entirely a Federal matter. Q. And that he needn't fear anything the district attorney of Essex County would do in the matter, that it was entirely a matter for the Federal government? A. It was entirely a matter for the Federal government. In my mind I had no idea that it was a State matter whatever."

After the jury were called in, the judge, subject to the exception of the defendants, found that the statement offered in evidence was voluntary, and instructed the jury in reference thereto as follows: ". . . bear in mind, gentlemen, this

testimony about to be introduced affects nobody except the person making the statement." Later during the trial, and after the admission in evidence of the statements of Getchell, Frothingham and Howard George, the attorney for the defendants further cross-examined West upon the issue, whether the statement of Getchell was voluntary, and in the course of that examination put to the witness questions and received answers as follows: "Q. All right. Didn't you say that it was best for him to tell his story? Don't look — A. I don't recall that I said so. Q. Will you say you didn't say it, Mr. West? A. That it was best for him to tell his story? Q. Will you say you didn't say it? A. I will not say, sir, no, but my recollection — Q. You won't say one or the other, will you? A. My recollection at the present time is I made no such statement. Q. You made no,— your recollection is now that you made no such statement? A. That is my recollection. Q. You will not say you didn't make that statement? A. No, sir. Q. No. You have no present recollection of what you actually did say three years ago, have you? A. Only the substance of it, sir. Q. Now, Mr. West, you didn't have to threaten Mr. Getchell, did you? A. No, sir. Q. No. You didn't have to tell him if he didn't come through he would be arrested, did you? A. No, sir. Q. But you did tell him it was best for him to make a clean breast of it, didn't you? A. No, sir, I didn't. Q. Do you remember you used that phrase? A. I don't remember just those words, sir. My best recollection is that it was an occasion upon which he should speak even though he had been involved in it in the past. Q. That it was best for him to speak as a good citizen, that it was best for him to speak as a good citizen? A. I don't recall making such a statement as that, sir. Q. You won't say you didn't say that? A. I will not, sir."

Upon the foregoing evidence the judge was clearly right in finding as a fact that the statement was voluntary, that is, that it was not induced by the pressure of hope or fear in order to obtain a promised relief or to avoid a threatened danger. *Commonwealth* v. *Morey*, 1 Gray, 461. *Commonwealth* v. *Tuckerman*, 10 Gray, 173, 191. The statement

made to West in his official capacity was *prima facie* voluntary. *Commonwealth* v. *Culver,* 126 Mass. 464. *Commonwealth* v. *Morey, supra. Commonwealth* v. *Szczepanek,* 235 Mass. 411, 414. The burden was upon the defendants to overcome the *prima facie* case. *Commonwealth* v. *Dascalakis,* 243 Mass. 519. The defendants offered no testimony in proof of their contention, and the testimony of West educed on cross-examination would not warrant the jury in finding that Getchell was induced to make the statement received in evidence because of any promise or threat to him made by West. It follows that there was no error in the refusal to allow the attorney for the defendants to argue to the jury that the statement was not voluntary. The same rulings in effect were made as to the statements admitted in evidence of the defendants Frothingham and George. They make no contention that the facts in their cases called for a different finding than the judge found in the case against Getchell. What has been said covers alike exceptions 8, 9, 10, 17, and each of them is overruled.

There was no error in the refusal of the court to require the witness West on cross-examination to answer the question: "Doesn't make any difference to you that you got the statement from these men after you had told them you wanted the statement to use in an investigation for the Federal courts and that the district attorney of the State courts had nothing to do with it?" The defendants' exception 15 rests upon their contention that the statements to the witness West were privileged statements which the court should not allow to be divulged or received without evidence that the privilege was waived by the United States of America, to be evidenced by some letter or authority from the Attorney General of the United States, citing *Worthington* v. *Scribner,* 109 Mass. 487. Indisputably the accepted law in relation to privileged communications to the government is that "Courts of justice . . . will not compel or allow the discovery of such information, either by the subordinate officer to whom it is given, by the informer himself, or by any other person, without the permission of the government." *Worthington* v. *Scribner, supra,* page 489. *Vogel* v. *Gruaz,*

110 U. S. 311. The principle thus laid down is not primarily for the protection of the witness or of the informer, but is adopted on the ground of public policy and because of its importance to the public. It does not apply when the informer is known or when the communication has been divulged. It is patent that a voluntary statement in the way of a confession of crime, as here, made to the government, does not contemplate governmental protection to the name of the declarant or the exclusion of the communications in any proceedings in any court where the name of the declarant and the subject matter of his communications are material and relevant to the issue in hearing, if the name of the declarant and the subject matter of the communications have ceased to be a secret of the government, and especially if the name of the declarant and the facts disclosed by the communications have become matters of general notoriety. There is nothing in the contention "that the statement [of Getchell] was privileged under the laws of the United States and cannot be used in any proceeding against him of whatever name, nature or description, and the testimony is in violation of his rights under the 14th amendment and the 15th amendment to the Constitution of the United States." It is assumed that the "5th amendment" was intended instead of the "15th amendment." This exception is overruled.

The exception to the charge "on the ground that it was argumentative in form, and the court over-emphasized the Commonwealth's case" is overruled. An exception to a whole charge cannot be sustained. *Commonwealth* v. *Duncan*, 250 Mass. 405, 407.

The remaining exceptions to specific parts of the charge are overruled. When such parts are read with their context and with the entire charge, they are not obnoxious to the criticisms that they were unfair, argumentative, or were charges with respect to matters of fact.

*Exceptions overruled.*