COMMONWEALTH *vs.* ROBERT HAYWARD GRAY.

Suffolk.	May 3, 1943. — May 28, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Evidence,* Photograph. *Practice, Criminal,* New trial, Examination of defendant by department of mental health.

At a murder trial, certain photographs of the murdered person were relevant and admissible on the issue whether the killing was with deliberately premeditated malice aforethought or with extreme atrocity or cruelty.

A new trial of an indictment for murder was not required by the circumstances in which, during direct and cross-examination of physicians called as witnesses by the Commonwealth, who had examined the defendant at the direction of the department of mental health under the provisions of § 100A of G. L. (Ter. Ed.) c. 123, as appearing in St. 1941, c. 194, § 11, their report, offered in evidence by the Commonwealth and to the effect that the defendant had no mental disease or defect affecting his criminal responsibility, was admitted without objection by the defendant and formed part of the basis of his counsel's argument to the jury.

The granting of a new trial of an indictment for murder was not required as a matter of law by circumstances alleged to show that the defendant was placed on trial without a proper examination of him under

§ 100A of G. L. (Ter. Ed.) c. 123 as appearing in St. 1941, c. 194, § 11, where it appeared that he, with knowledge of the nature of the report of the examination, had moved for a further examination but thereafter had waived such motion and had proceeded to trial without objection.

INDICTMENT, found and returned on August 4, 1942.

The case was tried before *Higgins,* C.J.

*H. E. Quarles,* for the defendant.

*J. T. Cassidy,* Assistant District Attorney, for the Commonwealth.

Cox, J.   The defendant, who was indicted on August 4, 1942, for the murder of Zelda Karchmer on July 7, 1942, was found guilty of murder in the first degree.   At the trial he was also tried on an indictment charging that, being armed, he robbed the deceased, and on another indictment charging him with breaking and entering the building where she lived. He was also found guilty on these indictments.   The trials were held under the provisions of G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended.   The defendant admitted that on July 7, 1942, he went to the deceased's home and slashed her neck with a razor, as a result of which she died.   The defendant's motion for a new trial, filed on February 4, 1943, was denied.   Claims of appeal and assignments of error were filed.

The first nine assignments of error are to the admission, subject to the defendant's exception, of photographs of the deceased that were taken after the killing.   No question is raised as to the identification of the photographs or as to their being fair representations.   All of the photographs show the wounds that were admittedly inflicted by the defendant and one also shows the deceased lying upon the bed, where the defendant, who was a witness, testified that he put her and "where her body was found."   This photograph shows the left leg of the deceased exposed to the region of her thigh.   There was testimony that when the body was discovered, it was nude from the waist down, and that, before the photograph in question was taken, a garment had been laid over the exposed part of the body except for the left leg.   The Commonwealth contended that the jury could find

that the deceased was murdered in the commission of the crime of robbery, or attempted rape, or with extreme atrocity or cruelty, and the murder indictment was submitted to the jury without objection, and with instructions by the judge which permitted them to find the defendant guilty of murder in the first degree if the crime was committed with deliberately premeditated malice aforethought, or with extreme atrocity or cruelty, or in the commission or attempted commission of a crime punishable with death or imprisonment for life. See G. L. (Ter. Ed.) c. 265, § 1.

We are of opinion that there was no error in the admission of the photographs. The question of their admissibility is disposed of adversely to the defendant by a long line of cases, some of which are *Commonwealth* v. *Robertson*, 162 Mass. 90, 97, *Commonwealth* v. *Tucker*, 189 Mass. 457, 476, *Commonwealth* v. *Retkovitz*, 222 Mass. 245, 248–249, *Commonwealth* v. *Knowlton*, 265 Mass. 382, 385, 386, *Commonwealth* v. *Osman*, 284 Mass. 421, 423, *Commonwealth* v. *Clark*, 292 Mass. 409, 410, 411, *Commonwealth* v. *DiStasio*, 294 Mass. 273, 282–283, and *Commonwealth* v. *Sheppard*, 313 Mass. 590, 598–599. The judge, in his charge, in referring to the photographs, plainly told the jury that they were introduced not to arouse in their minds any passion or prejudice against the defendant, but merely as evidence, the value of which was to be determined by them, apart from any thought they might have that the photographs were gruesome or prejudicial to the defendant.

The tenth assignment of error is based upon an exception to the denial of the motion for new trial, the first two grounds of which are that the verdict was against the evidence and the weight of the evidence, and that it was rendered contrary to law. Other grounds are that on July 22, 1942, the department of mental health, purporting to act under the provisions of G. L. (Ter. Ed.) c. 123, § 100A, as appearing in St. 1941, c. 194, § 11, examined the defendant with a view of determining his mental condition; that a report of this examination was filed with the clerk of the Superior Court prior to November 4, 1942 (the date on which the trial began); that this examination was not

made in compliance with the statute in question, in that it took place prior to the date on which the defendant was indicted; and that, accordingly, the defendant was denied due process of law in violation of his rights under the Federal Constitution and that of the Commonwealth. Further allegations are that the examination was conducted with a view of determining the mental condition of the defendant as of July 22, 1942 (the date on which the examination was made), and not as of the date on which the indictment alleged that the defendant committed the crime of murder, and that the report of the examination should not have been admitted in evidence, as it was. The assignments of error, eleven to fourteen, inclusive, are based upon exceptions to the denial of four requests of the defendant for rulings on the motion for new trial, (1) that upon all the evidence, the defendant is entitled to a new trial; (2) that a new trial is necessary in order to prevent a miscarriage of justice; (3) that a new trial should be granted, as a matter of law, to a defendant who has been denied the "privilege and protection" of an examination and investigation by the department of mental health as provided by statute; and (4) that a defendant is entitled to a new trial, and is denied due process of law, in being placed on trial in a capital case on the basis of a report of an examination of the defendant by the department, when such examination is conducted with a view to determine his mental condition, or the existence of any mental disease or defect that would affect his criminal responsibility, as of the date such examination is made, and not as of the date, alleged in the indictment, of the commission of the offence. Assignments of error, ten to fourteen, inclusive, may properly be considered together. We are of opinion that no error is disclosed.

The defendant contended that, at the time of the killing, he was in such a mental condition that he was not responsible for his acts, and there was evidence in support of this contention.

General Laws (Ter. Ed.) c. 123, § 100A, as appearing in St. 1941, c. 194, § 11, provides in part that whenever a person is indicted by a grand jury for a capital offence, "or

whenever a person, who is known to have been indicted for any other offense more than once or to have been previously convicted of a felony, is indicted by a grand jury or bound over for trial in the superior court," the clerk of the court shall give notice to the department of mental health, "which shall cause such person to be examined with a view to determine his mental condition and the existence of any mental disease or defect which would affect his criminal responsibility." The probation officer is required to disclose such facts as he has, which if known to the clerk would require notice to the department, and the department is required to file a report of its investigation with the clerk of the court in which the trial is to be held. The report is accessible to the court, the probation officer, the district attorney, and to the attorney for the accused. Prior to the enactment of this section, the judge of any court of the Commonwealth might, and still may, in his discretion, request the department to assign a physician to make such examination as he deemed, or deems, necessary, in order to determine the mental condition of any person coming before the court (G. L. [Ter. Ed.] c. 123, § 99), and there was, and still is, a further provision for the commitment to an institution for the insane of any person who, at the time appointed for trial or sentence, or at any time prior thereto, was, or is, found by the court to be insane or in such mental condition that his commitment was, or is, necessary for his proper care or observation pending the determination of his insanity. (G. L. [Ter. Ed.] c. 123, § 100.)

The report of the investigation into the mental condition of the defendant discloses that the department was notified that he was "held for trial" in the Superior Court, charged with the crime of murder; that the department had caused him to be examined on July 22, 1942; that the examining physicians found no evidence of a mental disease; and that, in their opinion, he was not suffering from any mental disease or defect that would affect his criminal responsibility. The physicians who made this examination were witnesses at the trial, and each testified, in effect, that the defendant was responsible for what he did. An expert called by the

defendant had previously testified in answer to a hypothetical question that, in his opinion, the defendant's criminal responsibility was impaired as a result of a mental defect resulting from his use of alcohol and marijuana cigarettes and that probably he could not distinguish between right and wrong at the time of the killing. He testified, further, that if the defendant, at the time, was beginning to hear voices and see visions, he was mentally defective, and that at the moment of the killing he acted "as an impulsive madman." At the close of the direct examination of the first physician from the department who had examined the defendant, the defendant's attorney asked for and received from the clerk the report of the examination that had been made, and then examined the witness as to what was and was not done at the examination, bringing out that the physicians did not have at hand information as to matters that had been testified to at the trial, relative to the defendant's mental condition, habits, family history, and his court records. When the witness was asked whether he had an opinion based upon the hypothetical question that had been put to the defendant's expert, he replied that his answer to that question would be, that, in his opinion, the defendant's criminal responsibility might be affected. At the close of the direct examination of the other physician from the department who had examined the defendant, the Commonwealth offered the report of the department of mental health. No objection was made, and it was admitted. Defendant's counsel then asked the stenographer to read the hypothetical question asked by the district attorney, upon which the last witness had based his opinion that the defendant knew the difference between right and wrong and was aware of his criminal responsibility, and asked what his opinion would be, if it were assumed that the defendant had hallucinations on the morning of the killing, to which the witness replied that, in his opinion, "That would affect his criminal responsibility." During the argument, the defendant's attorney, in referring to the testimony of the physicians from the department, stated that when they examined the defendant, they were not in possession of his full history "as they ad-

mitted .... That is, they only heard the few things which were contained in the psychiatric record which will be before you when you get into your jury room." He went on to tell the jury that both physicians had been very fair in the case, and pointed out the answers they had given upon cross-examination, hereinbefore referred to. The defendant now contends that, although the report of the defendant's mental examination was admitted in evidence without objection, this was error.

It is settled that in trials held in accordance with the provisions of G. L. (Ter. Ed.) c. 278, §§ 33A–33G, inclusive, as amended, there can be no valid assignment of error respecting a matter as to which exception might have been saved at the trial, unless there has first been such exception. *Commonwealth* v. *McDonald*, 264 Mass. 324, 336. *Commonwealth* v. *Polian*, 288 Mass. 494, 496–497. Nevertheless, we have examined the entire record (see *Commonwealth* v. *Chin Kee*, 283 Mass. 248, 256, and *Commonwealth* v. *Capalbo*, 308 Mass. 376, 382), and are of opinion that the verdict of the jury ought not to be disturbed on account of the admission of the report. It seems apparent from a careful examination of the transcript of the evidence, which is before us, that, at the time of the trial, the defendant's counsel wanted the jury to have this report. He well may have felt that he had successfully demonstrated by his cross-examination that the opinions of the physicians, who had examined the defendant before the trial, were based upon incomplete information, and that, in view of the evidence developed at the trial, it would be to the defendant's advantage for the jury to have the report before them, for the purpose of stressing this fact. His argument to the jury emphasized this. In short, he well may have thought that, in view of the answers on cross-examination of the physicians from the department, he had weakened their testimony upon direct examination as to the defendant's mental condition, and that in view of what he had accomplished, it would be of material help to the defendant if the jury had the report before them. It cannot be said that this was not good trial strategy.

Moreover, one of the physicians from the department testified, upon cross-examination, that the opinion expressed in the report related to the condition of the defendant at the time he was examined on July 22, 1942. In view of the defendant's contention relative to his mental condition at the precise time of the killing, and in all the circumstances, we are of opinion that a new trial ought not to be granted because of the admission of the report.

There was no error in the denial of the defendant's requests for rulings on the motion for new trial to the effect that the defendant was entitled to a new trial and that one was necessary in order to prevent a miscarriage of justice. The transcript of the evidence discloses that the judge followed the trial keenly and that his charge to the jury was complete and impartial, as it should be. We have examined the entire transcript and are of opinion that the two requests in question were rightly denied in the exercise of a sound discretion.

The remaining requests raise the question whether a new trial was required, as a matter of law, for the reason that the defendant had been denied the "privilege and protection" of an examination as provided by G. L. (Ter. Ed.) c. 123, § 100A, as appearing in St. 1941, c. 194, § 11, and also, whether he was denied due process of law by being placed on trial on the basis of the report that was made by the department of mental health, when the examination was conducted with a view of determining the defendant's mental condition as of the date of the examination and not as of the date of the killing. Reference has already been made to the provisions of the statute that require an examination. The record discloses, as already pointed out, that the department was notified that the defendant was "held for trial." The defendant, who was a witness, admitted that he had been sentenced to State prison on two indictments that were returned in January, 1933. It is not unreasonable to assume that this information was at hand at the time the department was notified that the defendant was "held for trial." In the circumstances, an examination was required under the statute.

The record discloses that the defendant filed a motion for "further" examination under the statute. In this motion he alleged that during his examination by the department of mental health, "in accordance with the provisions of the General Laws," certain information pertaining to his mental condition was not disclosed "to the qualified" physicians who conducted the examination; that he believed that a disclosure of such information would warrant a determination that his mental condition affected his criminal responsibility, and he asked leave to disclose such information, and that he "be further and fully re-examined on the basis thereof." Immediately after the district attorney moved for trial, the judge called the attention of the defendant's attorney to this motion; whereupon the defendant waived any right he might have under it.

The purpose of the statute requiring an examination was stated in *Commonwealth* v. *Devereaux,* 257 Mass. 391, 396–397, where it was said, in effect, that this examination is required in order that no person coming within the purview of this statute may be put upon his trial unless his mental condition is thereby determined to be such as to render him responsible to trial and punishment for the crime charged against him, and that he has no mental disease or defect which interferes with such criminal responsibility. As was said in *Commonwealth* v. *Vallarelli,* 273 Mass. 240, at page 249, "[Section 100A] is an important statutory provision, but its design is to forward the administration of public justice, not to put into the hands of those charged with crime a new weapon of defence"; and in *Commonwealth* v. *DiStasio,* 294 Mass. 273, 284, in speaking of the section of the statute in question, it was said that the "defendant was not required by law nor by any mode of compulsion to talk with the examiner, nor to answer his questions." Although the precise point now under consideration was not discussed in the last cited case, it is pertinent to observe that the Legislature cannot have intended that if a defendant charged with a crime, coming within the purview of the section in question, should refuse to be examined, he could for that reason alone prevent the Commonwealth from putting him

to trial.   It has been held that noncompliance with the provisions of the section in question does not invalidate the trial. *Commonwealth* v. *Vallarelli*, 273 Mass. 240, 249.   *Commonwealth* v. *Belenski*, 276 Mass. 35, 43.   But, apart from all this, it appears that a report was filed with the clerk of the court on July 29, 1942, as the result of a notice that was sent to the department of mental health on July 17, 1942, and we are of opinion that the judge was warranted in putting the defendant to trial on the basis of this report.   Moreover, as already pointed out, the defendant, in open court, waived any right that he might have under his motion for a further examination.   Accordingly, it appears that the defendant's counsel knew that the report that had been filed formed a proper basis on which a trial might be had.   Not only did he make no objection to proceeding with the trial, but he voluntarily closed the door to the possibility of a further examination.   The defendant was found guilty on November 10, 1942, and it was not until February 4, 1943, that the motion for new trial was filed.   The question now sought to be raised could have been presented at the trial. It cannot now be raised, as matter of right.   *Commonwealth* v. *Vallarelli*, 273 Mass. 240, 248, and cases cited.   But again we point out that we have examined the entire record and are of opinion that there is no occasion to interfere with the verdict.

*Order denying motion for new trial affirmed.*
*Judgment affirmed.*