COMMONWEALTH *vs.* CHARLES A. McGARTY.

Bristol.    October 25, 1948. — December 2, 1948.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Homicide. Practice, Criminal,* Medical expense. *Evidence,* Admissions and confessions, Photograph, Irresponsive answer. *Words,* "Extreme atrocity or cruelty."

No error appeared in the exercise of discretion in the denial of a motion by a defendant charged with murder that medical experts be engaged for him, where it appeared that physicians who had examined him under G. L. (Ter. Ed.) c. 123, § 100A, had reported that he was neither feeble minded nor insane, but that he had a psychopathic personalty, and there was nothing in the record before this court indicating that the defendant was not mentally responsible.

The reported evidence at the trial of an indictment charging murder did not as a matter of law require a finding that a confession of the defendant was the product of duress, threats or promises, and the confession properly was admitted in evidence.

No error appeared in the admission in evidence, at the trial of an indictment charging a man with murder of a girl eight years of age, of photographs of the whole body of the victim, although she was killed by choking, where there was evidence also warranting a finding of rape or of an indecent assault.

Testimony of a medical expert at the trial of an indictment charging a man with murder of a girl eight years of age warranted a finding that the victim was raped while she was still alive.

An exception to the admission of an answer of a witness on the ground that it was not responsive to the question asked could not be sustained where the answer gave competent testimony and no motion to strike it out was made by the excepting party.

At the trial of an indictment charging a man with murder of a girl eight years of age, evidence of throttling, of repeated blows in her face, and of a rape or an indecent assault warranted a finding that the murder was committed with such extreme atrocity or cruelty as to make it murder in the first degree.

On the evidence, at the trial of an indictment charging a man with murder of a girl eight years of age, no error appeared in an instruction to the jury that, if their verdict should be "murder in the second degree, that verdict" would "announce that" they · "did not believe that this was a murder deliberately premeditated" or "committed with extreme atrocity or cruelty" or "committed during the commission or attempted commission of rape."

INDICTMENT, found and returned on November 12, 1947. The case was tried before *Hurley*, J.

*J. S. Seligman*, (*W. C. Crossley* with him,) for the defendant.

*J. E. Lajoie*, District Attorney, (*W. J. Fenton*, Assistant District Attorney, with him,) for the Commonwealth.

LUMMUS, J. The defendant was found guilty in the first degree of the murder of his sister's eight year old daughter, Theresa Lafleur, in Fall River on the evening of August 4, 1947. The case comes here on his appeal, with an assignment of seven errors and a transcript of the evidence.

The girl was missed, and her father learned that she had gone to walk with the defendant. With a friend, one Lima, the father searched for the defendant and the girl with an automobile. They finally found the defendant, who said that he had left the girl at the junction of two streets, whence she intended to go to his brother's house. Later he admitted that he had killed the girl. The father then notified the Fall River police, who searched for the body of the girl during the night, and found it early in the morning of August 5, on Tom Mix's hill, in rough country.

The defendant testified, and did not deny the killing. He testified that he grabbed the girl by the throat. He testified that he told the police where to find the body, close to a big rock. In his argument, counsel for the defendant argued in favor of a conviction of murder in the second degree.

A medical expert, who examined the body, testified that the girl had died from strangulation and injury to her

brain, that her genital organs were torn and bleeding, and that in the blood were found spermatozoa and a pubic hair of an adult, which corresponded with pubic hairs cut from the person of the defendant. He testified that the facts found on his examination were consistent with rape.

The first error assigned is the denial by the judge of the defendant's motion to engage medical experts for him. It appeared that the defendant was intemperate, had been arrested for drunkenness, and had been drinking to excess shortly before the crime. The two physicians who examined him under G. L. (Ter. Ed.) c. 123, § 100A, reported that he is neither feebleminded nor insane, but has a psychopathic personality. We assume that the judge could have granted the motion under G. L. (Ter. Ed.) c. 277, § 56. But the matter was discretionary. Nothing in the medical report and nothing in the record indicated that the defendant was not mentally responsible. We find no error in the denial of the motion. *Commonwealth* v. *Belenski*, 276 Mass. 35, 44.

The second error assigned is the admission in evidence of certain admissions and a confession made by the defendant. Sergeant Patry of the Fall River police testified in substance as follows. The defendant said he walked from Theresa's house with her to Fourth Street where he gave her twenty-five cents and told her to go to his brother's house. But later the defendant told Sergeant Patry that he killed her, and that her body was at Tom Mix's hill. The defendant said, "I don't want to get beaten up," and the sergeant answered, "We don't operate that way," and told him he had nothing to fear. The defendant said that he took Theresa's "panties" off. He said he grabbed her by the throat and choked her. He said he had torn her clothes and ripped her pants off and inserted his finger in her vagina and had done damage there, in order to make it appear to be a sex crime and to divert suspicion from himself. The defendant accompanied the police in the search for the body, and told them where to find it. He said he held the girl on the ground with one hand while he hit her in the face with the other. He said that before he met Theresa

he had conceived the idea of killing one of the Lafleur children, because of a grudge he had against their father.

About noon on August 5, 1947, the defendant signed a written confession after reading it, and after being told that he need make no statement except of his own will. In his written confession he said that he took Theresa to walk into the woods at Tom Mix's hill, and there choked her, took her clothes off, hit her in the face several times, and forced his finger into her. He denied any sexual intercourse with her. In the process he got blood on his collar from her mouth. He said he killed Theresa for revenge against her father, and that he formed the purpose to kill her when he saw her playing at her house.

Prima facie, a confession is voluntary and admissible. *Commonwealth* v. *Congdon*, 265 Mass. 166, 174. *Commonwealth* v. *Clark*, 292 Mass. 409, 411. No assurance was given to the defendant except that he would not be beaten, and that assurance was not made conditional upon his confessing the crime. Before making his signed confession, the defendant was told that he was being given no promise or reward, but was asked to make a statement of his own free will, with the understanding that whatever he might say would be used against him. He declared that he understood that. It would be difficult to find in the evidence any support for an argument that his confession was other than voluntary. Surely a finding that it was the product of duress, threats or promises was not required. It was properly admitted in evidence and considered by the jury.

The third assignment of error was to the admission in evidence of photographs of the dead body of the girl, which showed her whole body, and not merely the head and neck to which was applied the force that caused death. The defendant's contention is that the sight of photographs showing the private parts of the girl, which had been torn and were covered with blood, would inflame the minds of the jury against the defendant. A similar contention has often been made in homicide cases, but it has never been sustained where the photographs had evidential value upon a material matter. *Commonwealth* v. *Retkovitz*, 222 Mass. 245, 248,

249. *Commonwealth* v. *Osman*, 284 Mass. 421, 423. *Commonwealth* v. *Clark*, 292 Mass. 409, 410. *Commonwealth* v. *DiStasio*, 294 Mass. 273, 282, 283. *Commonwealth* v. *Sheppard*, 313 Mass. 590, 599. *Commonwealth* v. *Gray*, 314 Mass. 96, 98. *Commonwealth* v. *Galvin, ante,* 205, 215. There was evidence warranting a finding of rape, and also evidence warranting a finding of an assault by inserting a finger in the vagina and tearing it. There was no error in the admission in evidence of the photographs.

The fourth assignment of error was to the admission in evidence of the testimony of a medical expert, who examined the body, that the presence of a pubic hair of an adult and of spermatozoa in the blood in and near the vagina was consistent with her having been raped before the killing. The defendant contends that the evidence did not warrant a finding that she was raped while still alive. We think the evidence of the medical expert was competent. He testified that the large amount of blood that flowed from the vagina indicated that the girl was still living when her vagina was torn. The jury could find accordingly.

The fifth assignment of error is to the admission of an answer of a chemist who examined the trousers of the defendant for blood. The witness testified that there was a blood stain on the trousers one and one half inches to the right of the inside seam of the right leg and approximately eight inches below the crotch, and that he cut out the piece containing this stain. He was asked, "Was that spot . . . the nearest blood stain to the crotch?" He answered, "That was the nearest blood stain to the crotch which was of sufficient size for me to conduct an analysis upon." The defendant did not move to strike out the answer, but noted an exception to its admission. "The proper practice where an irresponsive answer has been made is for the objecting party to move to have it stricken out for that reason, and if his motion is not granted to save an exception to the refusal." *Jacobs* v. *Cromwell*, 216 Mass. 182, 184. *Commonwealth* v. *Welosky*, 276 Mass. 398, 417. Moreover, there can be no sound exception to the admission of competent evidence, even though it comes in upon a question to which it

is not responsive. *Commonwealth* v. *Welosky, supra. Lewis* v. *Coupe,* 200 Mass. 182. *Nelson* v. *Hamlin,* 258 Mass. 331, 341. The matter was not of consequence, for the witness further testified that there were several smaller blood spots on the trousers within four or five inches of the crotch, so that all the facts were before the jury. The defendant fails to show that he was harmed by the action of the judge.

The sixth assignment of error is to the refusal to instruct the jury that the Commonwealth had failed to show that the murder was committed with such extreme atrocity or cruelty as to make it murder in the first degree, and that no rape had been proved. The judge instructed the jury that there could be no extreme atrocity or cruelty in acts committed upon a dead body, and that there could be no rape upon a dead body.

Unquestionably there was evidence of murder with deliberately premeditated malice aforethought. And we think there was evidence of murder committed in the course of a rape. But the judge submitted to the jury also the question of murder committed with extreme atrocity or cruelty, and the general verdict of guilty in the first degree may have been based upon such extreme atrocity or cruelty. G. L. (Ter. Ed.) c. 265, § 1. Those words mean that the means used were "extreme as compared with ordinary means of producing death." *Commonwealth* v. *Devlin,* 126 Mass. 253, 255. In several cases the rape of a child, coupled with other injuries, has been held sufficient to warrant a finding of extreme atrocity and cruelty. *Commonwealth* v. *Desmarteau,* 16 Gray, 1, 10. *Commonwealth* v. *Osman,* 284 Mass. 421, 425. Repeated violent blows have been held to evince such ferocity as would warrant a finding of extreme atrocity or cruelty. *Commonwealth* v. *Bartolini,* 299 Mass. 503, 516. In the present case, the evidence of throttling, of repeated blows in the face, and of inserting the finger in the vagina and tearing it, warranted a finding of extreme atrocity or cruelty. If, instead of the last element, the jury should find a rape, with similar tearing of the vagina, the same finding could be made. We find no error in the refusal of the instructions requested.

The seventh assignment of error assails the last paragraph of the charge, which was as follows: "If your verdict is murder in the second degree, that verdict will announce that you did not believe that this was a murder deliberately premeditated, it will announce that you did not believe it was committed with extreme atrocity or cruelty, it will announce that you did not believe it was committed during the commission or attempted commission of rape." We perceive no error in what the judge said. But the short answer is that the defendant saved no exception to it. *Commonwealth* v. *McDonald,* 264 Mass. 324, 336. *Commonwealth* v. *Gray,* 314 Mass. 96, 102.

The defendant asks us to review the whole evidence in accordance with G. L. (Ter. Ed.) c. 278, § 33E (St. 1939, c. 341), and to order a new trial on the ground that the verdict was against the law or the weight of the evidence or that for other reason justice requires a new trial. *Commonwealth* v. *Gricus,* 317 Mass. 403, 406, 407. *Commonwealth* v. *Bellino,* 320 Mass. 635, 645, 646. A careful review of the evidence discloses no reason for disturbing the verdict. It is hard to see how a conscientious jury could have reached any other result.

*Judgment affirmed.*