This is a petition for a writ of habeas corpus, addressed to the supreme court of Hawaii, but presented by the petitioner to me as a justice of that court. It prays that the warden of Oahu Prison be commanded to produce the bodies of John Palakiko and James Edward Majors, convicted murderers under sentences of death from the first circuit court of the Territory awaiting execution on the gallows pursuant to death warrants issued by the governor of the Territory to the warden in accordance with law. The *Page 142 
petition is brought by a sister of Palakiko upon her affidavit. At this juncture the events preceding and surrounding the filing of the petition are stated.
Palakiko and Majors were jointly tried and convicted for murder in the first degree upon an indictment containing three counts to meet the proof, the first count charging them with murder while committing the crime of rape, the second with murder while attempting to commit the crime of rape, and the third with murder with extreme atrocity and cruelty. The circuit court's judgment of conviction was affirmed upon error to the supreme court of Hawaii. (See Territory v. Palakiko et al., 38 Haw. 490.) From the judgment of the supreme court affirming the circuit court's judgment of conviction, they appealed to the United States Court of Appeals for the Ninth Circuit upon the single specification of error that "appellants were denied `due process of law' * * * under the Fifth Amendment * * * in that, the confessions which were introduced in evidence and used against the appellants in the trial court were not voluntarily made by the appellants." On this appeal the supreme court's judgment of affirmance was affirmed. (See Palakiko v. Territory of Hawaii, 188 F. [2d] 54.) No application for writ of certiorari was made to the Supreme Court of the United States and the time therefor has expired. On mandate from the United States Circuit Court of Appeals mittimus issued by the circuit court to carry out its original death sentences in accordance with law. The hour for execution of death sentences was fixed at eight o'clock in the morning of Saturday, September 22, 1951, by the warden pursuant to the death warrants.
At ten o'clock in the night of Friday, September 21, 1951, Palakiko's sister filed the instant petition, three attorneys representing her. The attorney general and assistant attorney general of the Territory were called by telephone and appeared asamici curiae. Argument on the *Page 143 
petition in open court commenced at midnight and concluded at three o'clock in the morning of Saturday, September 22, 1951, when on exercise of judicial discretion I refused to issue the writ and denied the petition. The reasons and findings therefor are hereinafter set forth in this opinion. From that decision the attorneys for the petitioner orally gave notice of an intention to appeal to the United States Court of Appeals for the Ninth Circuit and moved for a stay of execution pending appeal. They contended that my decision of denial is appealable. The attorney general and assistant attorney general concurred therein and in the propriety of granting a stay. Accordingly, the motion was granted by written order of temporary stay pending appeal, entered at four o'clock in the morning of Saturday — four hours before the scheduled execution.
The petition for writ of habeas corpus is based on the theory that fundamental rights, guaranteed by the Constitution of the United States, were contravened at the trial of Palakiko and Majors. The allegations of the petition state in effect as grounds for issuing the writ (1) that contrary to the Fifth Amendment the conviction of Palakiko and Majors for murder in the first degree had been obtained by use of involuntary statements or confessions secured through force and violence; (2) that the circumstances under which their confessions were secured, after arrest and before charge on being held incommunicado without advice of friends, family or counsel rendered those confessions involuntary and inadmissible under the Fifth Amendment in that they were deprived of "the right * * * to have the Assistance of Counsel for * * * [their] defence" within the meaning of the Sixth Amendment; (3) that they were denied due process of law under the Fifth Amendment because the third count of the indictment is based on a provision of statute which defines murder in the first *Page 144 
degree to be "murder * * * committed with extreme atrocity or cruelty" (R.L.H. 1945, § 11392) and which the petitioner claims to be unconstitutional for vagueness, ambiguity and uncertainty as well as for lacking a sufficient definite standard of conduct or spelling out of the offense. These kindred grounds thus concern purported failures to comply with the requirements of the Fifth Amendment that "no person * * * shall be compelled in any criminal case to be a witness against himself nor deprived of life, liberty or property without due process of law." The sufficiency of the allegations setting forth grounds one and two will be considered first and in doing so I take judicial notice of the record of trial and of it as reviewed on error and on appeal in so far as it may bear upon the confessions of Palakiko and Majors.
Palakiko and Majors, prior to the time of the murder, were convicts confined in Oahu Prison and had escaped from a road gang on March 10, 1948. At the time of the murder they were escaped convicts. Palakiko was recaptured on March 12. The body of the murdered victim was discovered on March 16, death apparently having occurred five days earlier and she having been gagged and bound, her jaws having been broken, and the position and condition of clothing having indicated that rape had been committed or attempted. Concerning this discovery, Palakiko was interrogated on March 20 by two police officers in the presence of a stenographic reporter at the police station and at the scene of the murder. On that interrogation of March 20 being reduced to writing, he signed it on March 24 as his only written confession introduced in evidence at the trial. Majors was recaptured on March 21, and made three statements or confessions, which were reduced to writing and introduced in evidence. One was made on March 21, one on March 22 and the last on March 24, when Palakiko was present and was asked some questions including *Page 145 
the query as to whether the statement then made by Majors was the "right story" to which he replied that it was. On being charged by indictment, Palakiko and Majors had for their defense the assistance of three able attorneys of the Hawaii bar as counsel. These attorneys vigorously and conscientiously not only defended them in the trial court but prosecuted their cause on error to the supreme court of Hawaii and on appeal to the United States Court of Appeals. These facts conclusively demonstrate that Palakiko and Majors were not deprived of their constitutional right to have the assistance of counsel for their defense. Nor do the circumstances before trial under which their confessions were secured render those confessions involuntary and inadmissible under the Fifth Amendment if they were in fact made freely and voluntarily within the meaning of statute. (R.L.H. 1945, § 9846. See Territory v. Chung Nung, 21 Haw. 214.)
The record of trial itself suffices to demonstrate that the trial of Palakiko and Majors not only was an imminently fair and impartial one under proper instructions of law, but met every requisite against self-incrimination and of due process of law under the Fifth Amendment. That they so received such a trial is doubly substantiated by correlated opinions of two appellate courts reviewing the same record of trial. Thus the supreme court of Hawaii reviewed that record and not only determined that the interests of justice did not require a new trial, but found from the undisputed evidence "that the confessions of the defendants * * * were voluntarily made without the slightest indication of force, threat, duress, or promise of reward or immunity and therefore clearly admissible." (Territory v. Palakiko et al.,supra, at page 492.) The United States Circuit Court of Appeals on the sole issue of due process of law as to those confessions likewise reviewed, determined and found to the same effect. It pointed out that "As for *Page 146 
the Palakiko confession, there is no evidence whatever that it was not entirely voluntary." It held that "The testimony without exception discloses that the confession [of Palakiko] was entirely voluntary [and] * * * we cannot find any basis for concluding that the three confessions [of Majors] were anything but voluntary in the sense that there was no disregard of the requirements of due process." (Palakiko v. Territory ofHawaii, supra, at page 56 and pages 60, 61, 62.) It stated that "the Hawaiian courts have in substance taken the same course as that described by the Supreme Court in Lisenba v. California,314 U.S. 219, 238, 62 S.Ct. 280, 291, 86 L.Ed. 166," and adopted with approval the language of that court as follows: "`Here judge and jury passed on the question whether the petitioner's confessions were freely and voluntarily made, and the tests applied in answering that question rendered the decision one that also answered the question whether the use of the confessions involved a denial of due process; this notwithstanding the issue submitted was not eo nomine one concerning due process.'" In holding that the "standards of fundamental fairness in securing a confession * * * required by the Fifth Amendment" were complied with in the instant case, it noted "that the requirements [of that Amendment] are the same as those of the Fourteenth Amendment." (Palakiko
v. Territory of Hawaii, supra, at 60.) The allegations of the petition stating grounds of self-incrimination and of denial of due process or of failure to comply with the requirements of the Fifth Amendment in securing and using the confessions are thus disproved by the record of trial itself and by it as reviewed on error and on appeal. Nor do the averments of the affidavit, made a part of that petition, state sufficient cause to show otherwise.
The petitioner swears in her affidavit that she with Palakiko's mother visited Palakiko at the police station *Page 147 
"on Friday afternoon, March 19, 1948," Palakiko having called his mother at about nine o'clock in the morning of the same day; that she observed that Palakiko had an abrasion on his forehead, a cut on his cheek and a swollen condition of his face; that his mother questioned him concerning this physical appearance; that he reluctantly responded by saying that he had been beaten by two certain-named police officers "from morning to midnight, to confess this murder * * * and that's the only way they could have gotten * * * [me] to confess, so * * * [I] signed the paper because * * * [I] couldn't stand it any longer." This hearsay description of the circumstances under which Palakiko's statement or confession was made and signed, is demonstrated in the record of trial to be false not only by the undisputed evidence that no force or violence was ever administered to Palakiko while in custody since his recapture and by the testimony of all the persons present when he actually made and signed his confession, but by the statement or confession itself, which on its face and under all the testimony relative thereto was made on the evening of Saturday, March 20, 1948, and signed on the afternoon of Wednesday, March 24, 1948 — more than five days after the time of signing averred in the affidavit. Nor did the attorneys of Palakiko on being informed of such hearsay description before trial as related in the affidavit presumably deem it credible after thoroughly testing it by exhaustive cross-examination of the officers implicated in the affidavit on the matter of Palakiko's physical appearance on the times of making and signing his confession. This is indicated by the fact that neither Palakiko nor the petitioner was called to or put on the witness stand even though both were available — he in the courtroom and she in the corridors of the courthouse during the entire trial. The allegations of petition and averments of affidavit stating grounds of self-incrimination and of denial of due process *Page 148 
in securing and using the confessions so being disproved and shown to be false, respectively, merit no further consideration.
There remains to be considered the allegations setting forth ground three. They question the provision of statute, on which the third count of indictment is based, and claim it to be unconstitutional for vagueness, ambiguity, and uncertainty in defining murder in the first degree as "murder * * * committed with extreme atrocity or cruelty." (R.L.H. 1945, § 11392.) Those allegations, however, do not question either the constitutionality of the alternative provisions of the same statute in defining murder in the first degree, on which the first and second counts are based, or the constitutionality of the provision of statute giving the common-law definition of murder and declaring that crime to be "of two degrees, the first and second, which shall be found by the jury." (R.L.H. 1945, § 11390.) Nor is there expressed any doubt of the validity of those provisions. The constitutional question as presented by these allegations is thus narrowed to the one alternative means of committing "murder * * * with extreme atrocity or cruelty," described by statute in defining murder in the first degree in contradistinction to murder in the second degree.
In relation to that question, it is significant that the petitioner cites no authority to support her claim of unconstitutionality and I have found none which does. It is further significant that the provision in question has been a part of the statutory law of this Territory since 1890 (see L. 1890, c. 72, § 2 a) and presumably was adopted from the State of Massachusetts, which has had an identical provision on its statute books since 1858 (see Laws of Mass. 1858, c. 154, § 1-3; Gen. L. 1932, c. 265, § 1) without the validity thereof being in issue before the appellate court of either jurisdiction. But judicial pronouncements and *Page 149 
observations have been made in both jurisdictions which are interpretative of the words "murder * * * committed with extreme atrocity or cruelty" consonant to judicial sanction of the validity of the provision containing them. (Rep. Haw. v.Yamane, 12 Haw. 189; Commonwealth v. Desmarteau,82 Mass. 1; Commonwealth v. Gilbert, 165 Mass. 45, 42 N.E. 336;Commonwealth v. Devlin, 126 Mass. 253; Commonwealth v.Feci, 235 Mass. 562; Commonwealth v. McGarty,323 Mass. 435, 82 N.E. [2d] 603.) In making them, the supreme courts of Hawaii and Massachusetts apparently had no difficulty in ascertaining the meaning of those words and their application to circumstances of murder in any particular case. Thus the supreme court of Massachusetts said that "Those words mean that the means used were `extreme as compared to ordinary means of producing death.'" Commonwealth v. McGarty, supra, at page 440;Commonwealth v. Devlin, supra, at page 255. To the same effect the supreme court of Hawaii approved an instruction which in part reads: "It is not necessary in order to convict the defendants of * * * murder * * * with extreme atrocity or with extreme cruelty to prove that * * * the manner of committing it was the most atrocious or the most cruel possible; but the crime must have been committed with atrocity or with cruelty of a higher degree than is usually incident to murder." (Rep. Haw.
v. Yamane, supra, at page 209.) In similar vein, the supreme court of Massachusetts approved an instruction on murder committed with extreme atrocity and cruelty by observing that "The crime of murder always implies atrocity and cruelty in the guilty party; but there are degrees of criminality in that respect, even in the felonious and malicious taking of human life; and, in order to justify a finding of murder in the first degree, it requires that something more than the ordinary incidents of the crime shall exist — something implying more than ordinary criminality, and manifesting *Page 150 
a degree of atrocity or cruelty which must be considered as peculiar and extreme." (Commonwealth v. Devlin, supra, at page 255.) Such judicial pronouncements and observations are persuasive in harmony with the ordinary and commonly accepted meaning of the words contained in the provision and therefore explanatory of the fact that the issue of the provision's invalidity for vagueness or uncertainty has never been raised for appellate decision. Being of clear and unambiguous language, the provision in my opinion contains sufficient standards of guilt which readily can be determined by a jury objectively from the circumstances under which a murder has been committed such as those under which Palakiko and Majors committed murder and such as the comparable circumstances under which the defendants in theDevlin, Feci and McGarty cases, supra, committed murder. It thus meets the test of conveying sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. (See Connally v. General Constr. Co.,269 U.S. 385; Jordan v. De George, 341 U.S. 223, 95 L.Ed. 886.) Nor are impossible standards of specificity required. I therefore declare the provision to be constitutional and the count of indictment based on it as well as the entire criminal proceedings against Palakiko and Majors to be valid. The allegations setting forth ground three merit no further consideration.
Palakiko and Majors having been afforded due process of law at every stage of those valid proceedings without being denied any constitutional right whatsoever, the allegations and averments of petition and affidavit, respectively, to the contrary are insufficient in fact and in law to state a case entitling them or the petitioner to a writ of habeas corpus. Such are the reasons as assigned herein which essentially constitute the basis on which I exercised *Page 151 
my judicial discretion in refusing to issue the writ and in denying the petition.
By oral declaration of her attorneys, the petitioner gave notice of intention to appeal from my decision of denial to the United States Court of Appeals for the Ninth Circuit and did so on the assumption that that decision is appealable. But the jurisdictional requisite of such an appeal is that the decision appealed from must constitute a final decision of the supreme court of Hawaii. This is evident from the language of section 1293, title 28, United States Code (62 Stat. 929) that "The courts of appeals for the First and Ninth Circuits shall have jurisdiction of appeals from all final decisions of the supreme courts of Puerto Rico and Hawaii, respectively * * * in all habeas corpus proceedings * * *." The question whether or not a decision of a justice of the supreme court of Hawaii denying a petition for a writ of habeas corpus constitutes a final decision of that court within the meaning of section 1293 as a limitation of appellate jurisdiction has not been judicially answered. That novel question, however, may well be answered in the negative by the court of appeals upon an interpretation of section 1293 in the light of the applicable law of the Territory should the petitioner appeal from my decision. (See McKnight v. James,155 U.S. 685, an analogous case.) In such case the petitioner would be put to needless expense resulting from an abortive appeal. To avoid that possibility and to obviate possible delays in fairness to the petitioner and for the public good, I hereby refer the petition, addressed as it is to the supreme court of Hawaii, to that court for its final decision. On presentation I will sign a new order staying execution pending that decision in lieu of the old order staying execution pending appeal.
Petition denied by me but referred to full court. *Page 152